[Civ. No. 23481. Third Dist. Apr. 16, 1985.]

ORIE ALFRED BROWN, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY AND
COLLEGES, Real Party in Interest and Respondent.

COUNSEL

Colley, Lindsey & Colley and Nathaniel S. Colley, Sr., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Charles C. Kobayashi, and Susan P. Underwood, Deputy Attorneys General, for Real Party in Interest and Respondent.

OPINION

BLEASE, J.—Four years after discovery of allegations that associate professor Orie Brown made amorous overtures to two adult female students,

officials of California State University at Sacramento (CSUS) filed charges of misconduct. They charged these acts (and three others), as "a series and pattern of sexual harassment of female students," were cause for dismissal and Brown was fired. The two remote acts and one other occurring in 1979 were upheld as justifying dismissal by the State Personnel Board (board). Brown appeals from a judgment denying him relief by way of a writ of mandate (Code Civ. Proc., § 1094.5). We conclude that the extreme delay in filing these charges precludes their use as grounds of discipline and that the remaining ground of discipline is insufficient to sustain the charge made. We will reverse the judgment and direct Brown's reinstatement.

## FACTS

The basis for the dismissal is unprofessional conduct and failure to perform the duties of his office, charged as "a series and pattern of sexual harassment of female students." The events sustaining the cause were alleged to be five in number, three of which it was alleged were accompanied by threats of retaliation or retaliation. CSUS admits that it "does not now, and never has had any rule, regulation, law or policy against faculty and students dating each other, or even living together or marrying one another." Thus, the claim of misconduct is not premised on the fact of the sexual overtures alone. Rather, it is the extensiveness of the conduct which impairs the teacher student relationship by threats of retaliation which is viewed by CSUS as rendering the matter actionable.

Brown was charged in 1981 with five instances of sexual harassment of his female students, in violation of Education Code section 89535, subdivisions (a), (b) and (f). The board found that allegations of two of the instances were baseless. Allegations that Brown had linked his conduct with retaliation or threats of retaliation were found not to be true. Of the remaining charges two of the instances were in 1975 and the remaining instance in 1979. The board did find that these three charges had merit, albeit in two cases only partial merit. This was found to be cause for dismissal as both unprofessional conduct and a failure to carry out the duties of his position. (Respectively subds. (b) and (f) of Ed. Code, § 89535.)[1]

At the outset of the board hearing Brown argued that two of the three incidents which form the basis of his dismissal should not be considered because the events in 1975 are too remote to serve as grounds of discipline. The board hearing officer rejected the contention that delay in prosecution of the charges could bar their use as a basis of dismissal. He said that if the

---

[1]The board impliedly rejected the charge that the conduct was also immoral conduct. (Ed. Code, § 89535, subd. (a).)

evidence showed inability to defend as a result of the delay he would consider the claim. In his proposed decision the hearing officer reiterated the conclusion that no statute of limitation was applicable to failure to prosecute a misconduct claim against a CSUS employee. The hearing officer found the passage of time had prejudiced Brown with respect to defense of the two charges found not sustained but that there was no such prejudice regarding the 1975 incidents. A general description of the charges found substantiated by the board will suffice to set the analytical stage.

Brown taught courses in criminal law at CSUS in the spring of 1975. One of Brown's female students, Ms. H., accompanied him to his office after they had been drinking beer in the school cafeteria. Brown made a pass at her, embracing her and attempting to kiss her. She rejected his advances. Another female student, Ms. N., was discussing an extra credit paper with Brown in his office when he made comments on her attractive physical appearance. He made a pass at her, embracing her and attempting to kiss her. She pushed him away and left his office.

Neither student complained to school authorities concerning these incidents until a year later, in the spring of 1976, when Brown was being considered for promotion and tenure. Then the complaints came to the attention of Professor Melnicoe, the chairman of Brown's department. Melnicoe testified that, although he believed the complaints were relevant to Brown's fitness to teach, they were not mentioned in the promotion and tenure proceedings. He said that the charges were not pursued as disciplinary matters because of the reluctance of the complainants. Melnicoe did bring them to the attention of his administrative superiors but was instructed "not to go forward [with] anything because the complainants were unwilling to take any action at that time."

Brown testified that Melnicoe brought up the accusations prior to the award of promotion and tenure. He also testified that the school's rules provided that charges of misconduct were germane to the decision to grant or deny tenure and promotion. He testified that he was summoned before the faculty committee considering his application for tenure and promotion and questioned concerning the charges of Ms. N. and Ms. H. Thereafter, the committee recommended that he receive tenure and be promoted. The CSUS president accepted the recommendation. The board found that the Ms. H. and Ms. N. incidents had been "discussed by the faculty of the department at a meeting where [Brown's] promotion was being considered."

The final alleged incident of sexual harassment sustained by the board hearing officer occurred four years later. It concerned Ms. B. She was a

student in two of Brown's courses in the fall of 1979. She had sought Brown out on two occasions to discuss with him personal problems unrelated to her coursework. Later, on October 15, 1979, she went to his office to discuss her difficulties in studying for midterm examinations. While she was there Brown asked when his "date" was. Ms. B. said there was no date and noted Brown was a married man and a parent. As she was leaving Brown stated he would "sure like to make love to [her]." Ms. B. took this to be a proposition and was offended. She complained to another university professor who took her to Melnicoe.

Melnicoe took no immediate action. In January 1980 Ms. B. filed a title 9 complaint with CSUS. An investigation was commenced by university authorities in March 1980. A protracted review procedure culminated in the issuance of the notice of dismissal in June of 1981. The notice included Ms. B's charges as one of the alleged "series and pattern of sexual harassment of female students." The notice is the administrative pleading upon which the dismissal action which we review was predicated.

DISCUSSION

I

Brown challenges the five-year delay in the bringing of charges based upon the 1975 events on grounds it violates the statute of limitations in Government Code section 19635 and, failing that, constitutes laches. Only the latter claim has merit.

Brown implicitly relies upon the statute of limitations applicable to state civil service employees, Government Code section 19635. It provides: "No punitive action shall be valid against any state employee for any cause for discipline based on any civil service law of this State, unless notice of such punitive action is served within three years after the cause for discipline, upon which such notice is based, first arose. Punitive action based on fraud, embezzlement, or the falsification of records shall be valid, if notice of such action is served within three years after the discovery of such fraud, embezzlement, or falsification." ■ This section would be dispositive of the 1975 charges if it governed state university disciplinary proceedings. It does not. Although Brown is a state employee, the *cause* of discipline (Ed. Code, § 89535) is not "based on any civil service law . . . ."[2]

---

[2]Employees of the California State University and Colleges are exempt from the constitutionally mandated civil service system. (Cal. Const., art. VII, § 4, subd. (h).) They are state employees. (*Slivkoff* v. *Board of Trustees* (1977) 69 Cal.App.3d 394, 401 [137 Cal.Rptr. 920].) However, they do not come within Government Code section 19635 because it applies only to a "cause for discipline based on any civil service law of this State . . . ." The cause of discipline in this case stems from Education Code section 89535 which is not a civil service law. (See Gov. Code, § 18526.) That the Legislature has accorded the state universities some attributes of civil service protection, e.g., tenure and the right to a

Brown then suggests that the provisions of Government Code section 19635 have been incorporated into the board's hearing procedures which are made applicable to him by Education Code section 89539. That is not the case. Section 89539 provides that when, as here, a university employee elects to have his case heard before the board, the board "shall hold a hearing, following the same procedure as in state civil service proceedings . . . ." That direction addresses only the civil service *hearing* procedures before the board. It refers to Government Code section 19578 which requires that the "hearing shall be conducted in accordance with the provisions of Section 11513 of the Government Code . . . ." The latter section specifies the evidentiary and other rules for the conduct of the hearing. It does not encompass pleadings, notices and other matters ancillary to the hearing such as matters pertaining to the limitation of actions (Gov. Code, § 19630 et seq.) of which Government Code section 19635 is a part.

Thus, Government Code section 19635 does not directly govern the period within which CSUS must file charges, nor does it do so via Education Code section 89539. These conclusions, however, do not mean that section 19635 has no application to Brown's case.

## II

In civil actions laches is a bar to equitable relief. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity § 14, pp. 5239-5240; *Stevenson* v. *Boyd* (1908) 153 Cal. 630, 636 [96 P. 284].) It has been made applicable to quasi adjudicative proceedings as a common law policy pursuant to the "inherent power [of courts] independent of statutory provisions to dismiss an action on motion of the defendant where it is not diligently prosecuted." (*Steen* v. *City of Los Angeles* (1948) 31 Cal.2d 542, 546 [190 P.2d 937]; cf. *Gates* v. *Department of Motor Vehicles* (1979) 94 Cal.App.3d 921, 924-925 [156 Cal.Rptr. 791]; see generally Cal. Administrative Hearing Practice (Cont.Ed.Bar 1984) Proceedings Before Hearing, § 2.21.) "The policy to expedite justice underlying the rule, exists where the proceeding is before a local administrative agency exercising quasi judicial functions such as the board in the instant case. By analogy a proceeding before such a board should be dismissed where an unreasonable time has elapsed—where the proceeding is not diligently prosecuted." (*Steen, supra,* at pp. 546-547.) In such cases "the appointing power is analogous to what in a civil action would be the plaintiff, and the employee the defendant." (*Id.,* at p. 547.)

---

State Personnel Board hearing concerning disciplinary action, does not have the effect of conversion of their status to that of civil service employees. (*Cal. State Employees Assn.* v. *Trustees of Cal. State Colleges* (1965) 237 Cal.App.2d 530, 538-539 [47 Cal.Rptr. 73].) Thus Government Code section 19635 cannot be applied *directly* as a limitation applicable to Brown's dismissal.

Thus the administrative agency must diligently pursue the disciplinary action as if it were seeking equitable relief. In measuring diligence the courts will apply notions of laches borrowed from the civil law.

In civil actions the "defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617], fns. omitted.) Ordinarily delay alone does not constitute laches because "[t]he policy of this state with respect to lapse of time is [separately] embodied in statutes [of limitation] . . . ." (*McGuire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 736 [146 Cal.Rptr. 673, 151 A.L.R. 1062].) For this reason the courts "have consistently rejected the concept that lapse of time less than the period of limitations in itself constitutes a defense." (*Conti, supra,* at p. 359, fn. omitted.) Thus "[d]elay is not a bar unless it works to the *disadvantage or prejudice* of other parties." (7 Witkin, Summary of Cal. Law, *supra,* Equity, § 15, p. 5240; see also 2 Pomeroy's Equity Jurisprudence (5th ed. 1941) pp. 177-179.)

It is said that "[t]here is no fixed rule as to the circumstances that must exist or as to the period of time which must elapse before the doctrine of laches can be appropriately applied." (*Brown* v. *State Personnel Board* (1941) 43 Cal.App.2d 70, 78 [110 P.2d 497].) That is so because what generally makes delay unreasonable is that it results in prejudice. "These two factors are interrelated . . . ." (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 908 [191 Cal.Rptr. 629, 663 P.2d 187].) " 'It is not so much a question of the lapse of time as it is to determine whether prejudice has resulted. If the delay has caused no material change *in statu quo, ante,* i.e., no detriment suffered by the party pleading the laches, his plea is in vain.' " (*Conti, supra,* 1 Cal.3d at p. 360, quoting from *Brown, supra,* at p. 79.) Because of the relationship between prejudice and delay the circumstances which give rise to laches vary widely depending upon their interplay in the specific case.

However, there is one circumstance in which unreasonable delay could be found as a matter of law. At the common law, in cases in which equity was not strictly bound by the statute of limitations applicable to actions at law, the courts sometimes adopted for purposes of laches "a period within which its aid must be sought, similar to that prescribed in analogous cases at law." (1 Wood on Limitations (4th ed. 1916) p. 276; cf. *Holmberg* v. *Armbrecht* (1945) 327 U.S. 392, 396 [90 L.Ed. 743, 747 [66 S.Ct. 582, 162 A.L.R. 719].) In such cases the burden was placed on the plaintiff to show a reasonable excuse for the delay. (*Wood, supra,* at p. 277, fn. 64.) A similar rule has been adopted in California. In cases in which no statute

of limitations directly applies but there is a statute of limitations governing an analogous action at law, the period may be borrowed as a measure of the outer limit of reasonable delay in determining laches. (See *In re Marriage of Modnick, supra,* 33 Cal.3d at p. 909; *Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 343 [15 Cal.Rptr. 71, 364 P.2d 247]; *Keys* v. *Marin County* (1871) 42 Cal. 252, 256; *Ponce* v. *Graceous Navigation, Inc.* (1981) 126 Cal.App.3d 823, 829 [179 Cal.Rptr. 164]; *Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995 [115 Cal.Rptr. 620]; *Longfellow* v. *Presidente Miguel Aleman* (1974) 36 Cal.App.3d 508, 514 [111 Cal.Rptr. 643]; *Protopappas* v. *Protopappas* (1963) 213 Cal.App.2d 659, 665 [28 Cal.Rptr. 884]; *Curbelo* v. *Matson Navigation Co.* (1961) 194 Cal.App.2d 305, 308 [14 Cal.Rptr. 913]; compare *Zastrow* v. *Zastrow* (1976) 61 Cal.App.3d 710, 714-715 [132 Cal.Rptr. 536]; see also *Ulakovic* v. *Metropolitan Life Ins. Co.* (1940) 339 Pa. 371 [16 A.2d 41]; 3 Sutherland, Statutory Construction (4th ed. 1974) § 70.03; cf. *Lux* v. *Haggin* (1886) 69 Cal. 255, 269 [10 P. 674]; Civ. Code, § 3511.) Whether or not such a borrowing should occur depends upon the strength of the analogy.

■ We find a strong analogy in Government Code section 19635. As related, it does not govern this case *as* a statute of limitations. However the section does reflect a legislative policy judgment that a delay of three years is inherently unreasonable in the prosecution of a disciplinary action against a broad range of public employees. The vast and undifferentiated gamut of state employees which are covered by this provision includes employees whose positions mirror those of CSUS employees. (See, e.g., Gov. Code, § 18597.) Thus, section 19635 provides a compelling indication of the outer limit of delay which is reasonable in the prosecution of a disciplinary action against an employee of the state university system. We borrow this period and hold that unless excused, a delay in the initiation of disciplinary proceedings for more than three years is unreasonable as a matter of law.

The board offers as contrary a line of case law of which *Bold* v. *Board of Medical Examiners* (1933) 133 Cal.App.23 [23 P.2d 826] is the leading case. It asserts that statutes of limitation in the Code of Civil Procedure should not be borrowed and applied to administrative disciplinary proceedings. (Also see, e.g., *Bernd* v. *Eu* (1979) 100 Cal.App.3d 511 [161 Cal.Rptr. 58]; *Rudolph* v. *Athletic Commission* (1960) 177 Cal.App.2d 1, 22 [1 Cal.Rptr. 898]; cf., e.g., *In re Lowenthal* (1889) 78 Cal. 428 [21 P. 7].) However, this case law is distinguished by two critical considerations. First, the analogies between the claims covered by the civil statutes of limitations and those at issue in the administrative actions were weak. Second, in none of these cases was there a delay *by* the public agency against whom laches was asserted. By contrast, the analogy between the kind of cases

covered by Government Code section 19635 and Brown's case provides a precise parallel and it is the agency which has delayed.

That leads us to consider the effect of the unreasonable delay. ██ Statutes of limitation and the doctrine of laches share a common policy. " 'Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " (*Wood* v. *Elling Corp.* (1977) 20 Cal.3d 353, 362 [142 Cal.Rptr. 696, 572 P.2d 755], quoting from *Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342, 348 [88 L.Ed. 788, 792, 64 S.Ct. 582].) The policies also encompass other forms of injury such as those resulting from a change of position during a delay. A statute of limitations effectuates these policies by a fixed rule which, absent tolling, bars the proceeding without proof of prejudice. Laches, on the other hand, requires proof of a delay which results in prejudice or change of position.

However, as applied to laches the "effect of the violation of [the analogous] statute is to shift the burden to the plaintiff to prove that his delay was excusable and that the defendant was not prejudiced thereby." (*Curbelo, supra,* 194 Cal.App.2d at p. 310; see also *Ponce, supra,* 126 Cal.App.3d at p. 830.) That gives effect to the policies of the statute in the context of laches while removing the rigidity of the statutes of limitation. *Conti* says that the burden of proof of prejudice ought not to be shifted, at least where the party asserting the defense of laches enjoys better access to the date respecting prejudice. (*Conti, supra,* 1 Cal.3d at p. 361.) But *Conti* did not concern the borrowing of an analogous statute of limitations. Rather it operated within a context of a directly governing statute of limitation. In that context, the policy of the statute was effected solely as a statute of limitations. Here, no effect can be given to the policy of the borrowed statute unless it establishes a presumption which shifts the burden of proof. We turn to the issues of excuse and prejudice.

"In order to excuse delay, [the responsible party] must show exceptional circumstances prevented earlier action." (*Ponce, supra,* 126 Cal.App.3d at p. 829, citation omitted.) That might be shown, for example, where the public agency lacks knowledge of the grounds of action. That is not the case here. ██ The only excuse advanced by CSUS is the reluctance of the witnesses to the 1975 events to lodge a formal complaint. This is unpersuasive. If an overt sexual advance to a student while acting as a professor is unprofessional conduct that is so regardless of the subjective response of the student. Whether the student welcomes the advance, declines the

offer, or is deeply affronted, is extraneous. Unprofessional conduct may be a breach of the rights of the particular student or students affected. However, with respect to the dismissal of a professor for cause, the administrative cause of action is not founded upon a private right of a particular student. It is founded on the right and duty of CSUS to deter misconduct with punishment, just as a criminal offense is a matter between the state and the offender, independent of the wishes of the victim of the offense. The disposition of the victim may be of interest in the exercise of discretion to prosecute or not to prosecute. However, when the election is made to forego prosecution the unreasonable delay that attends that election is not excused merely because the authorities have deferred to the wishes of the victim. It is just as unfair to let an employee "twist slowly in the wind" regardless of who the employer permits to hold the rope. CSUS attempts to bolster its argument by noting it has a "practice" to act only upon written complaint. That is not an excuse. A self-imposed constraint is no more a justification because it is delineated a practice than if it is discretionary. We note that when CSUS made up its mind to act it was able to persuade the formerly reluctant victims to participate.

In sum, we find no cognizable excuse for the delay of four years in initiating the disciplinary action concerning the 1975 events.

■ That leaves the issue of prejudice. CSUS did attempt to meet this burden. The board said: "[Brown] made no showing of injury as a result of the delay in the charges, nor could he do so. The only witnesses who testified about each of these incidents were the women involved and appellant. No one else could have testified, since appellant was alone with each woman at the time of the alleged harassment. None of their memories seemed to be dimmed by the passage of time. Thus, there was no injury, and the doctrine of laches does not apply." The board however did not go far enough. Assuming that we credit its determination of credibility, prejudice may also be established by detrimental reliance by the affected party upon the status quo. (See *Vesper* v. *Forest Lawn Cem. Assn.* (1937) 20 Cal.App.2d 157, 165-166 [67 P.2d 368]; see also e.g., *Lux* v. *Haggin, supra,* 69 Cal. at pp. 269-270; *Conti* v. *Board of Civil Service Commissioners, supra,* at p. 360 relying upon *Brown* v. *State Personnel Board* (1941) 43 Cal.App.2d 70, 79 [110 P.2d 497]; see also *Zakaessian* v. *Zakaessian* (1945) 70 Cal.App.2d 721, 726-727 [161 P.2d 677].) The record shows such reliance. The tenure committees in 1976 advanced Brown to tenure in the face of the 1975 charges. The board found that the Ms. H. and Ms. N. incidents had been "discussed by the faculty of the department at a meeting where [Brown's] promotion was being considered." That is a

circumstance which we must assume, in the absence of contrary proof by CSUS, led Brown to devote his energies to his employment with CSUS and perforce to forgo other employment opportunities. Nothing in the record supports an inference that Brown was without alternative prospects. Professor Melnicoe testified that Brown was a good teacher whose evaluations compared favorably with other faculty members. The loss of four years at the outset of an academic career is a considerable change of position in reliance upon the status quo. That works a sufficient prejudice to transform the unreasonable delay in this case into the bar of laches. Accordingly, the disciplinary action may not be founded upon the 1975 events.

### III

■ That leaves intact the finding of a single sexual advance made in 1979 without threats of academic retaliation and tenders the question whether it alone supports the disciplinary action. We will answer in the negative because it does not support the charges upon which the disciplinary action was taken and they cannot be amended at this late date.

The notice of dismissal, the charging document filed by CSUS, alleged a linked set of events as the singular ground constituting the cause for discipline. It charged that "[t]he events upon which the . . . causes [e.g. unprofessional conduct] are based are a series and pattern of sexual harassment of female students by you, including harassment of: [Ms. N., H. and B. accompanied by threats or retaliation]." The finding of a single sexual advance to Ms. B., made without threat or retaliation, remaining after elimination of the 1975 charges from consideration, does not support that charge. Manifestly a single instance does not constitute a series or a pattern. Nor was the act accompanied by retaliation as charged. That bears upon the question whether the advance impinged upon Brown's professional duties. We again note that CSUS admits that it "does not now, and never has had any rule, regulation, law or policy against faculty and students dating each other, or even living together or marrying one another." Accordingly, there is not substantial evidence to support the charge made. (See Code Civ. Proc., § 1094.5; cf. *Wheeler* v. *State Bd. of Forestry* (1983) 144 Cal.App.3d 522, 528 [192 Cal.Rptr. 693].) That conclusion compels Brown's reinstatement.[3]

---

[3]It might be argued that the appropriate disposition is to remand the case to the board for a reconsideration of the penalty in the light of the remaining finding. That is sometimes appropriate in cases in which there has been a failure to make a finding necessary to support

 The discipline of an employee of the California State University and Colleges must be predicated upon a "statement of causes [*and*] the events or transactions upon which the causes are based . . . ." (Ed. Code, § 89538.) The causes for discipline are set forth in Education Code section 89535 and include unprofessional conduct. The university initiates the disciplinary proceedings by giving a notice (the charging document) to the employee alleging the causes and events upon which discipline is based and takes the disciplinary "action" (Ed. Code, §§ 89538, 89539). The action constitutes the university's judgment that the conduct, i.e., the alleged "events or transactions," meets CSUS's criteria of the alleged *cause* of discipline, e.g., unprofessional conduct, and that the respondent has engaged in it. Neither section 89539 nor any other provision of law[4] permits the amendment of the charging document after CSUS has taken its disciplinary action.[5]

Where, as here, the employee elects an appeal to the State Personnel Board, Education Code section 89539 governs both the grounds of appeal and (necessarily) the grounds upon which the board may act, here "that the employee did not do the *acts or omissions alleged* as the events or transactions upon which the causes are based . . . ." (Italics added.) This provision limits the board's authority to act (Ed. Code, § 89539) to the alle-

---

the charge made. (See *American Funeral Concepts* v. *Board of Funeral Directors & Embalmers* (1982) 136 Cal.App.3d 303, 314 [186 Cal.Rptr. 196]; *Robinson* v. *State Personnel Bd.* (1979) 97 Cal.App.3d 994, 1003-1004 [159 Cal.Rptr. 222].) However, nothing in these cases authorizes an amendment of the charging document or requires a respondent to defend against a charge not made.

[4]It is noteworthy that the provisions which govern state civil service proceedings, although not applicable here, provide for amendment of the charging document only prior to the submission of the appeal for decision by the board. In such case, "[i]f the amended . . . notice presents new causes *or* allegations the employee shall be afforded a reasonable opportunity to prepare his defense thereto . . . ." (See Gov. Code, § 19575.5, italics added.)

[5]In the absence of a procedure which permits a respondent to prepare for and contest an amended charge a serious constitutional problem arises. Due process requires that the respondent be given "notice . . . of the standards by which his conduct is to be measured" (*Wheeler* v. *Board of Forestry, supra,* 144 Cal.App.3d at p. 527) and "fair notice as to the reach of the [disciplinary] procedure." (*In re Ruffalo* (1968) 390 U.S. 544, 552 [20 L.Ed.2d 117, 123, 88 S.Ct. 1222].) That requires that the respondent be given adequate notice both of the claimed legal standard and the events which are alleged to contravene it and an opportunity to challenge them. Where the cause alleged has potential application to a broad range of conduct, such as unprofessional conduct, the events alleged to contravene the charge do more than allege what must be proved. They also provide criteria by which the charge is narrowed. (Cf. *Wheeler, supra,* 144 Cal.App.3d at pp. 527-528.) Any significant amendment of the events alleged to constitute the cause alters not only what must be proved but may alter the criteria by which the cause is to be measured. Although Brown was put on notice that the *events* which constitute the remaining finding were in issue their significance as a singular ground of discipline was not charged or communicated to him. That might have entirely altered the cast of Brown's case. We note that the board expressed equivocation about the viability of the 1979 events as a sole ground of discipline. We imply no opinion on that subject.

gations of the charging document. Consequently, the board may not alter the charging document or take action upon a charge not made.

The judgment is reversed. The trial court shall issue a peremptory writ of mandamus directing the reinstatement of Brown and according him any other relief to which he may be entitled as a result of said reinstatement.

Puglia, P. J., and Carr, J., concurred.

On May 14, 1985, the opinion and judgment were modified to read as printed above. The petition of real party in interest and respondent for review by the Supreme Court was denied July 31, 1985.