[No. C004110. Third Dist. Aug. 16, 1989.]

FERNANDO NEGRETE, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Appellant;
FRANCHISE TAX BOARD, Real Party in Interest and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Richard M. Frank and Ramon M. de la Guardia, Deputy Attorneys General, for Defendant and Appellant and for Real Party in Interest and Appellant.

Gary P. Reynolds and Darrell S. Steinberg for Plaintiff and Respondent.

OPINION

BLEASE, Acting P. J.—Defendant California State Personnel Board (Personnel Board) and real party in interest California Franchise Tax Board (Tax Board) appeal from the trial court's decision to grant a writ of mandate in favor of plaintiff Fernando Negrete.

The Personnel Board affirmed an order of the Tax Board suspending Negrete for 90 days without pay because he was "inefficient" in failing to discover promptly that his supervisor had rescinded an order which directed the destruction of tax returns in violation of Tax Board rules. The trial court concluded that the Personnel Board abused its discretion in upholding the discipline because "inefficiency" was not alleged as a ground of

discipline in the notice of adverse action. We agree and shall affirm the judgment.

FACTS

In January 1986, Fernando Negrete worked as an auditor for the Tax Board. Negrete worked with a group of auditors supervised by Willie Crawford. That group audited three types of protestor returns. These three types of tax protestors included constitutional objectors, home churches, and family trusts.[1]

Crawford's auditors were divided according to types of returns audited. Generally, auditors in the group handled only one of the three types of "protest" returns. Some auditors, including Negrete, handled both "vow of poverty" and "family trusts."

In January, February and March 1986, members of Crawford's group worked overtime to "eliminate inventory from the constitutional taxpayers." Through that overtime, they hoped to cull returns from taxpayers who had filed valid returns for two consecutive tax years after previously filing "constitutional" protests.

As part of the purge, Crawford gave his group special instructions for the destruction of purged returns. Crawford instructed the group "to place returns that the statute of limitation had run on into destruct[ion] boxes . . . [along with] [c]onfidential materials [attached to the returns]." Some of the material to be purged included old, valid returns from taxpayers who later submitted constitutional protests.

The circumstances surrounding Crawford's order to destroy certain files remain cloudy. No dispute exists that Negrete heard Crawford's instructions. The parties do dispute the timing and content of the instructions. Crawford claimed that he gave the order during a staff meeting. Negrete, however, claimed that Crawford gave out his instructions to individual auditors while walking down the office aisles.

---

[1] Constitutional tax protestors file returns containing no financial information. In many cases the jurat is crossed out. These protestors also often object to taxation in "constitutional type language." The Tax Board considers such returns illegitimate.

"Family trusts" involve a taxpayer's transfer of assets and income to a family trust in the hopes of lowering taxes. The Tax Board treats these as valid returns.

"Home churches" involve taxpayers who obtain "a mail-order license to become a minister, donate money to [their] home church and use that money for personal expenses and take the contribution deduction on a [state] tax return." These include "vow of poverty" returns. These returns are from individual members of religious orders. Such individuals often do not report their incomes on their individual state tax returns; they claim instead that their religious order receives their income.

The parties also dispute the content and scope of Crawford's instructions. Crawford claimed that he intended his destruction order to apply only to the constitutional protests. Nevertheless, he admitted that his instruction did not specify that only constitutional returns were to be placed in the auditors' destruct box. He also admitted that he did not tell the auditors not to place either the "home church" or "family trust" returns into the destruct boxes.[2]

Crawford's instructions surprised many of the auditors. The instructions contradicted a cardinal Tax Board rule. Under a long-standing internal policy, auditors were to send any returns marked for destruction to "Central Files and Central Files [only] ha[d] the authority to destroy them."

Until the middle of February, Crawford's destruction instruction remained in effect. At that time, Crawford's own supervisor discovered the instruction and recommended that the auditors resume sending all valid returns to "Central Files" for destruction. Accordingly, Crawford rescinded his earlier instructions.

At a staff meeting, Crawford informed his auditors of the prior order's rescission. At that meeting, he simply told his staff not to place returns in their destruction boxes. Nobody, however, remembers seeing Negrete at that meeting. Crawford did not tell Negrete at any other time that the prior order was rescinded. Crawford never followed up his instructions to ensure that the staff complied with the new order. As far as Crawford knew, Negrete never received or heard about the oral instruction to stop placing the returns in the destruct box.

Oblivious to the initial order's rescission, Negrete continued to place certain returns in the destruction box for several more months. On June 4, 1986, Barbara Barnes, an "outsearcher," went to Negrete's work area to search for returns requested by the Tax Board's legal department.[3] When she first arrived, Negrete was not at his desk. To her surprise, she found tax returns in Negrete's destruction box. Barnes talked about her discovery with Al David, an auditor who sat at a desk behind Negrete. Negrete then walked up and David told him that Crawford had rescinded the order to put returns in the destruction box. Negrete thus first learned of the order's rescission from David.

---

[2] Crawford apparently believed that since the auditors' overtime was primarily directed toward purging the constitutional files, his unusual instructions would be limited to such returns. At the time of the purge, however, Negrete, Crawford, and some other auditors were working on all three kinds of protests. Negrete destroyed closed returns of all three kinds.

[3] "Outsearchers" are Tax Board employees sent to retrieve files needed by other departments.

Barnes left and returned looking for further files. At that point she perceived another violation by Negrete of Tax Board rules. The Tax Board forbade auditors from placing tax returns in their desks because outsearchers were prohibited from opening auditors' desk drawers. While Barnes searched the destruction box for the returns she needed, Negrete pointed to his desk drawer and said that he also used that as part of his destruction box. To Barnes's surprise, she found tax returns in that desk drawer.[4]

Word of Negrete's practices filtered up quickly through the department hierarchy. Douglas Dick, manager of the general audit section, investigated. Dick concluded that Negrete was violating Tax Board procedure by placing the purged returns in his destruction box. Dick concluded that Crawford had limited his initial order to constitutional protests and only for the overtime period. In light of Dick's belief in the specificity of Crawford's order, he concluded that the extent of Negrete's improper destruction of files demonstrated his "untrustworthiness." Relying upon the Tax Board's statement of incompatible conduct, Dick determined that Negrete's destruction of tax returns damaged the integrity of the tax structure and justified dismissal.[5]

On June 18, 1986, the Tax Board notified Negrete of his dismissal. The notice of adverse action specified five subdivisions of Government Code section 19572 as causes for his discipline. None of them included "inefficiency."

A hearing was held before an administrative law judge. In his decision, the judge did not mention any of the five statutory causes charged in the Tax Board's notice. Rather, he stated that, "[a]s cause for dismissal, it is

---

[4] Negrete apparently used his desk drawer as a "way station" in a completed file's course from desk top to official destruction box. In response to instructions to make the office neater, auditors moved their destruction boxes from the floors near their desks to credenzas behind their desks. Negrete's credenza was six feet behind his desk. To avoid a constant traverse of the six-foot distance, Negrete opened one of his bottom desk drawers and affixed a blue-tag marked "confidential, for destruction only" to the drawer. He left the drawer always open. In this way, he intended to tell any would-be file searchers that the contents of that drawer were part of his destruction box. Periodically, Negrete transferred material from the desk drawer portion of his destruction box to the official box itself.

[5] Negrete received a copy of the Tax Board's incompatability statement. Among other things, this document prohibits specific activities. Item 11 involves "willfully misusing, misplacing or destroying tax returns or personal information or willfully performing any act which damages the integrity of the tax files." Further provisions subject Tax Board employees to immediate dismissal for infraction of "Item 11."

At the subsequent hearing, the Tax Board introduced the incompatability statement as exhibit 2. It also introduced Negrete's written acknowledgement of receipt of the incompatability statement as exhibit 3. Negrete did not provide either exhibit to the trial court as part of his administrative record. He has moved this court to take judicial notice of those and other exhibits inadvertently omitted from the trial court's consideration. We grant the request.

alleged that [Negrete] violated [Tax Board] rules by placing tax returns in his desk and destruct box." However, the violation of the rules was not made the subject of discipline. It was grounded on inefficiency in not discovering that the order Negrete believed he was following had been rescinded. The Personnel Board adopted the decision as its own. Negrete petitioned the superior court for a writ of mandate. Negrete challenged inter alia the Tax Board's failure to charge him with "inefficiency"; the sufficiency of the evidence of "inefficiency"; and the severity of the 90-day suspension. The trial court granted the petition on all grounds.

The Personnel Board and Tax Board timely appeal from the resulting judgment directing issuance of a peremptory writ setting aside the decision of the Personnel Board.

## DISCUSSION

### I

The grounds and means of discipline of a state employee are governed by statute. An adverse action may be taken against an employee only for a "cause for discipline specified in this article." (Gov. Code, § 19571.)[6] The causes so specified are to be found in section 19572. It provides that "The appointing power . . . may take adverse action against an employee for one or more of the causes for discipline . . . . Adverse action is valid only if a written notice is [timely] served on the employee . . . [containing] (a) a statement of the nature of the adverse action [and] . . . (c) a statement of the reasons therefor in ordinary language . . . ." (§ 19574.)[7]

---

[6] Unless otherwise specified all further references are to the Government Code.

[7] The "reasons" language replaces the earlier provisions phrased as "(a) a statement of the nature of the punitive action; . . . (c) a statement of the causes therefor; [and] (d) a statement in ordinary and concise language of the acts or omissions upon which the causes are based; . . . ." (Stats. 1957, ch. 938, § 6, p. 2160.)

This change in language does not and could not augur a change in the notice requirement. First, the statutes continue to authorize discipline only for contravention of a statutory cause. (§§ 19571, 19572.) Second, a "statement of . . . reasons" reasonably amplifies the "nature of the adverse action" by linking the statutory causes of discipline to the acts or omissions which bring the employee within a cause. Thus the provision specifying the conditions permitting a supplemental or amended notice of adverse action continues to refer to "new causes or allegations." (§ 19575.5.) Third, a statement of causes and material facts comports with the requirements of due process of law. "Due process requires that the respondent be given 'notice . . . of the standards by which his conduct is to be measured' (*Wheeler* v. *Board of Forestry* [1983] 144 Cal.App.3d [522] at p. 527 [192 Cal.Rptr. 693]) and 'fair notice as to the reach of the [disciplinary] procedure.' (*In re Ruffalo* (1968) 390 U.S. 544, 552 [20 L.Ed.2d 117, 123, 88 S.Ct. 1222].)" (*Brown* v. *State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1164,

The employee is, with exceptions, entitled to a hearing by the Personnel Board conducted in accordance with section 11513 of the Government Code. Thereafter, the Personnel Board must render a decision which "shall be in writing and contain findings of fact and the punitive action, if any." (§ 19582, subd. (e).) Since an adverse action may be taken against an employee only for a "cause for discipline specified in" section 19572, the required findings of *material* fact must explicitly or implicitly reveal the "causes" upon which the Board relies in imposing discipline. (Cf. *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12], fn. 16.)

██ The question is whether the Personnel Board complied with these provisions of law, i.e., whether the findings of the Personnel Board square with the allegations of the notice of adverse decision of the Tax Board.

## II

Negrete was charged in the Notice of Adverse Action with violations of subdivisions (d) [inexcusable neglect of duty], (o) [willful disobedience], (q) [violation of Board Rule 172], (r) [§ 19990, conflicting employment], and (p) [misuse of state property] of section 19572. No amended or supplemental notice of adverse action was filed. (§ 19575.5.) Accordingly, these are the "causes" by which the case against Negrete must be judged. (See *Brown* v. *State Personnel Bd., supra,* 166 Cal.App.3d 1151.) Notably missing is subdivision (c) of section 19572, "inefficiency," the ground upon which the Personnel Board predicated its disciplinary action.

The decision of the Personnel Board specifies "[a]s cause for dismissal, . . . that [Negrete] violated Franchise Tax Board rules by placing tax returns in his desk and destruct box." The Board identified these rules as follows. "[Negrete] works in the Tax Protestors Unit of the Franchise Tax Board. The Franchise Tax Board has two very important rules. The first is that tax returns should not be placed in a desk because other employees are

---

fn. 5.) There is an implicit acknowledgement of these requirements in the notice of adverse action given Negrete, which separately identifies the causes and acts and omissions claimed to justify the disciplinary action.

The change in language does serve a purpose, the recognition that the correct application of the broad language of a statutory cause may require specification of the agency approved work *practices* by which it measures the propriety of an employee's performance of his assigned tasks. That is especially the case with a cause, such as "neglect of duty" which is meaningless without specified duties. (Cf. *Wheeler* v. *Board of Forestry, supra,* 144 Cal.App.3d 522, [incompetence].) In such a case, without a recognized (or recognizable) agency practice the imposition of discipline would be purely ad hoc. In any event the contents of the notice of adverse "action constitutes the [agency's] judgment that the conduct . . . meets [its] criteria of the alleged *cause* of discipline . . . and that the [employee] has engaged in it." (*Brown* v. *State Personnel Bd., supra,* 166 Cal.App.3d at p. 1164, original italics.)

not permitted to search individual desks and the returns must always be available. The second is that tax returns should never be destroyed except under carefully controlled circumstances and then only by personnel in Central Files."

However, the decision also states that, notwithstanding these rules, Negrete's "supervisor told [him] and others to place the files that were to be purged in their destruct boxes." Apparently, this instruction was ambiguous with respect to the files subject to this direction. Negrete's unit processes three types of tax returns, classified as constitutional protestors, home church protestors and family trust protestors. As the Personnel Board found, Negrete "was confused about the entire procedure. He thought all three types of protestor files should be purged and that all three types should be placed in the destruct box."

Whatever the scope of the direction given Negrete, it was not countermanded until "the supervisor superior to [Negrete's] supervisor discovered files in the destruct box." Negrete's supervisor then "cancelled his instructions to place the files in the destruct box." Negrete claimed that his supervisor never told him to stop placing files in the destruct box. The Personnel Board accepted Negrete's testimony, saying "[Negrete] appears to be an honest dedicated employee. He sincerely believed that his supervisor had given him instructions to purge all three types of files by placing them in the destruct box."

The Personnel Board concluded that dismissal for violation of the Tax Board rules was too severe. It said that "none of the other employees were confused as to the instructions or as to the cancellation of the order." In pinpointing the precise shortcoming which justified the imposition of punishment the Personnel Board concluded that Negrete "was very inefficient in not finding out what was going on especially when he was involved in such unusual activity as personally destroying individual tax files for such an extended period of time."[8] That is the sole ground asserted by the Personnel Board as justifying the discipline imposed upon Negrete. As next we show, this does not square with the grounds asserted in the notice of adverse action.

## III

The notice of adverse action is divided into two parts. The first asserts the causes warranting discipline. It makes no reference to the Tax Board rules

---

[8] Although the Personnel Board concluded that Negrete also violated a Tax Board rule that tax returns should not be placed in a desk, that violation was not asserted as a ground of punishment. Since section 19582 imposes a burden on the Personnel Board to set forth in its decision the material facts which warrant disciplinary action, we conclude that such a violation is not a ground of punishment and accordingly do not assess its validity.

nor to the practices of the agency which might govern the work performance of an employee. Nor does it refer to inefficiency as a cause of discipline. Whatever is to be found in the notice on this score is to be found in a section entitled "acts or omissions."

It states in pertinent part: "On November 19, 1982, you signed a receipt for the department's Statement Regarding Incompatible Activity. Willfully performing any act which damages the integrity of the tax files was specifically listed as incompatible, inconsistent or in conflict with the duties of departmental employees." This is the first mention of the Tax Board rules. Of importance to this case, it does not appear in the provision of the notice which advises Negrete of the formal "causes" of discipline. For that reason it can do no more than provide detail which amplifies the claimed application of a stated "cause" to the case. "Where [as here] the cause alleged has potential application to a broad range of conduct . . . the events alleged to contravene the charge do more than allege what must be proved. They also provide criteria by which the charge is narrowed." (*Brown* v. *State Personnel Bd., supra,* 166 Cal.App.3d at p. 1164, fn. 5.)

However, such criteria cannot create a new cause, one not formally identified in the notice as a cause. Rather such criteria show the correct application of the cause and thus are aspects of the rule which constitutes the cause. The notice reveals confusion on the part of the Tax Board about what is a cause, i.e., a rule governing the imposition of discipline, and what constitutes an extension or application of the rule (the criteria of its correct application). The correct applicability of a rule is not an act or omission *of* the employee but an *aspect* of a cause, a ground of discipline. This confusion is replicated in other "acts or omissions."

The question is then tendered whether the "acts and omissions" nonetheless allege conduct that comes within a stated cause. It is alleged that Negrete's supervisor "indicated" to the manager, general audit section, with whom he had met, that "he had instructed, when staff was working overtime, that files of constitutional type tax protestors be placed in destruct boxes. However, this order was later rescinded and staff had been so advised. Also, he indicated [to the manager] that the types of files you [Negrete] were putting in the destruct box were not the type for which special handling instructions were given, and that he had never authorized Family Trust cases to be handled in any special manner." There is a further assertion that "tax files are not to be kept on an employee's desk, because other employees are told not to search for returns in individual's desks."

What is implied is that there are rules of *practice,* presumably implementing the statement of incompatible activity, instituted by instruction, order

or by implication from them. However, it is not the garbled manner by which these rules surface in the discursive context of "acts and omissions," located in conversations and indirect claims of instructions, which is decisive. Rather it is that the violation of the rules is not the ground of discipline; (curiously) the ground of discipline is that Negrete "inefficiently" failed to discover that his superior's order to violate one of them was rescinded.

IV

The Personnel Board concluded that Negrete deserved discipline because he "was very inefficient in not finding out what was going on . . . ." The Personnel Board's decision presupposes that "inefficiency" meaningfully applies to Negrete's conduct. More importantly, it presupposes that "inefficiency" is somehow subsumed under one or more of the stated causes of discipline. It is at this point that the decision runs aground.

The Personnel Board found Negrete "inefficient" for failing to "[find] out what was going on . . . ." In effect, the Personnel Board concluded that Negrete should have, as other employees did, discovered whether his supervisor had *rescinded* the prior order notwithstanding that the supervisor, who apparently violated the announced Tax Board rules himself, did not rescind it in any apparent form likely to reach all of the employees to which it was directed. We need not decide whether or not this is a kind of inefficiency, i.e., whether Negrete performed his job productively in a manner consistent with that of others similarly situated (see *Bodenschatz* v. *State Personnel Board* (1971) 15 Cal.App.3d 775 [93 Cal.Rptr. 471]). The prior question of law is whether the conduct labeled as inefficient reasonably comes within any of the formally noticed "causes" of discipline.

As we said, Negrete was formally charged with five causes of discipline under section 19572: subdivisions (d) inexcusable neglect of duty; (o) willful disobedience; (p) misuse of state property; (q) violation of this part of Tax Board rule 172; and (r) violation of the prohibitions set forth in accordance with section 19990.

The first four specified "causes" are plainly inapplicable. Clearly Negrete was not found to have willfully disobeyed his superior's order. If anything, he was found to have obeyed too much. Nor could it be said that he neglected his duty in failing to discover that his supervisor's order had been rescinded.[9] Neglect of duty is not measured by whether other employees

---

[9] Nowhere in the record does such a duty expressly appear. Nor can we reasonably imply such a duty from the circumstances of the case. We find it hard to imagine how the Tax Board would ever get anything done if its employees had a standing duty to question the

also failed to do what was done. The failure to discover what others had been told at a staff meeting is simply not a species of neglect of duty.[10] Nor could it reasonably be said that an "inefficient" failure to discover a rescission of an order constitutes a misuse of state property where the subject of the order was the property presumably misused. With respect to a violation of Tax Board rule 172 we are not told nor does the record provide us the content of this rule. The only rule bearing that number which we could discover, State Personnel Board rule 172, has to do with the general qualifications of employees in the state service and says nothing about the handling of tax returns. That leaves one remaining ground of interest.

A violation of section 19990 was alleged as a cause in the notice of adverse action. It contains nothing of direct import for the efficient handling of tax files in the course of Negrete's employment. It is addressed to "any . . . activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to" an employee's duties. The activities or enterprises specified as within its purview relate to *private* activities outside of the course and scope of state employment, such as using state facilities for private gain, which are inconsistent with state employment. Section 19990 does not pertain to the establishment of rules relating to the performance of an employee's *assigned* tasks, upon which any claim of inefficiency must rest.

The Personnel Board rested its decision to punish Negrete solely upon grounds of "inefficiency." It has implicitly rejected the other charged grounds as bases for discipline. Consequently, Negrete's discipline stands or falls on the finding of "inefficiency." Inefficiency is a specific cause of discipline under section 19572. Assuming that in some cases conduct characterized as "inefficiency" also may be held to have violated another *stated* "cause" of discipline, we cannot find that to be the case here. Accordingly, the Personnel Board has failed to ground its discipline of Negrete upon a noticed cause of discipline, as required by statute.

---

continuing validity of their marching orders. When would that duty arise? One hour, one day, one week, one month, one year after the instruction's initial receipt?

Similarly, the Personnel Board's reliance on the length of time Negrete followed the "unusual" order also does not establish an implicit duty to inquire. If the order was "unusual" it was so when originally issued by Negrete's superior in violation of the Tax Board's rules. There is nothing to show that the order became unusual by the passage of time.

[10] Moreover, the Personnel Board's reliance on the *other* employees' awareness of the initial order's rescission does not suggest that Negrete had notice that he should have inquired about the order's continued validity. The record shows no evidence that Negrete was personally told by Crawford or any other Tax Board employee of the order's rescission. No memo was sent around. The record similarly does not show that the circumstances of daily life in the Tax Board's office would otherwise have given Negrete notice of the changed order. For example, the Tax Board introduced no evidence that Negrete could somehow have observed a change in the other employees' conduct after the order's rescission.

We affirm the judgment.

Sims, J., and Marler, J., concurred.