Filed 10/24/14  Barber v. The Cal. State Personnel Bd. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| PATRICK BARBER, | |
| Plaintiff and Appellant, | E057014 |
| v. | (Super.Ct.No. CIVRS1108683) |
| THE CALIFORNIA STATE PERSONNEL BOARD, | OPINION |
| Defendant and Respondent; | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Real Party in Interest. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph R. Brisco, Judge.  Reversed with directions.

Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

1

Department of Corrections and Rehabilitation Office of Legal Affairs, Alfred Mondorf, Assistant Chief Counsel, and Stephen A. Jennings, Staff Counsel, for Real Party in Interest.

This is an appeal by Patrick Barber from a judgment denying his petition for a writ of administrative mandamus.[1]  Barber filed the petition to challenge the decision of the State Personnel Board (SPB) to uphold the decision of the Department of Corrections and Rehabilitation (CDCR) to terminate Barber's employment as a parole agent assigned to a state youth correctional facility.  Barber contends, among other things, that the findings at the SPB hearing are different from those alleged in the notice of adverse action (NOAA) and, therefore, termination of his employment violates his due process right to notice of the charges against him and an opportunity to defend.  We agree and, therefore, will reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are undisputed.  Barber started work in 1998 for CDCR at the Heman G. Stark Youth Correctional Facility.  In early 2009, CDCR served a NOAA on Barber in which it stated his employment was terminated effective April 10, 2009.  The NOAA alleged that on October 31, 2007, Barber "punched" Edward Rios, a youth correction counselor, in the upper torso, and tried to strike Rios several more times while the two were working at the youth facility.  The NOAA further alleged "your attack on

---

[1] On April 8, 2013, we reserved ruling on appellant's request for judicial notice filed March 14, 2013, for consideration with this appeal.  The request is denied.

[Rios] was referred to the San Bernardino County District Attorney's Office," and in August 2008, the district attorney accepted the case for prosecution.

The NOAA included four additional factual allegations, two of which alleged Barber used profanity at work on November 21, 2007. The remaining two allegations charged Barber with being dishonest during an internal affairs investigation on October 8, 2008, when he denied punching Rios and claimed he had only lightly touched him in a joking manner. The NOAA alleged Barber's conduct constituted cause for discipline under Government Code[2] section 19572, subdivisions (d) (inexcusable neglect of duty), (f) (dishonesty), (m) (discourteous treatment of the public or other employees), and (t) (behavior either during or outside duty hours of such a nature to cause discredit to the appointing authority or the person's employment).

Barber appealed his dismissal to the SPB. Barber, Rios, and various other witnesses testified at the SPB hearing. In addition to witness testimony, a video recording of the incident between Barber and Rios, captured by a security camera, was introduced into evidence. The administrative law judge (ALJ) issued a decision in which he granted Barber's motion to dismiss the profanity allegations because they were barred by section 3304, which establishes a one year statute of limitations. The ALJ also found Barber had not "punched" Rios; he "poked" Rios as he passed by him in the hallway, which is what Barber said during the internal affairs interview. Barber stated during the

_____

[2] All further statutory references are to the Government Code unless otherwise indicated.

3

investigation and in his testimony at the hearing that he had rolled up a report he was carrying and used that to poke Rios, but the ALJ found it was unclear from the video recording whether Barber used the rolled up report or his hand to touch Rios. The ALJ's factual findings regarding the circumstances that prompted Barber's action were consistent with Barber's version of what had occurred.

The ALJ also found that Rios's description of the events as recounted in the internal affairs investigation, alleged in the NOAA, and in his testimony at the hearing was not credible. In particular, Rios claimed Barber had punched him, that Rios "swung a punch" at Barber, then Barber "drove" Rios back into a nearby office where Barber threw 6 to 10 more punches, all of which Rios successfully blocked. Rios then caught Barber by the wrists and forced him to the ground. According to Rios, the incident lasted about a minute, and then he and Barber walked out of the office. The ALJ found Rios's description of the events was inconsistent, unsupported by the video recording of the incident, and in conflict with expert witness testimony regarding physical biomechanics and hand-to-hand combat.

Based on the noted findings, the ALJ found the evidence did not support the allegation that Barber had been dishonest within the meaning of section 19572, subdivision (f). Therefore, the ALJ dismissed that charge. However, the ALJ found that the remaining grounds for termination were supported by the evidence and, therefore, the other charges were sustained.

The ALJ sustained the allegation of inexcusable neglect of duty (§ 19572, subd. (d)) based on Barber's unprovoked act of poking Rios. The ALJ believed Barber's

4

explanation that his motivation for poking Rios was to teach him a lesson. The ALJ also accepted Barber's explanation that his actions were prompted by a conversation about a recent incident, referred to as the Brass assault, in which a group of wards had assaulted staff member Patrick Brass, who suffered injuries severe enough to put him in the hospital. Rios said in that conversation that he would have been able to defend himself against the assault. Barber thought Rios was arrogant and naïve, and did not understand how quickly things could get out of control at the facility. Shortly after that conversation, when Barber saw Rios in a hallway, he decided to demonstrate his point by teaching him a lesson. As they passed in the hallway, Barber reached out and poked Rios. Rios stopped and then walked to a nearby office. Barber followed him. All of this was captured on the security camera video recording. In the office, which was not visible to the security camera, Barber waived his arms around while asking Rios how he would defend himself if he did not know where the punches were coming from.

The ALJ found Barber's actions were ". . . both harassing and disruptive [and] in violation of a clear written policy . . . against any kind of violence in the workplace . . . ." In the ALJ's view, Barber was fully aware of the policy and chose to violate it. The ALJ found that Barber's "intentional failure to follow a known policy constitutes inexcusable neglect of duty under Government Code section 19572, subdivision (d)." Therefore, the ALJ sustained that charge.

The ALJ also sustained the charge under section 19572, subdivision (m), that Barber had engaged in discourteous treatment of a fellow employee. The ALJ found that even accepting Barber's "explanation that his harassing and disruptive behavior was

5

committed so that [he] could teach . . . Rios a lesson, his hostile behavior cannot be excused. It was not [Barber's] place to take such action but [he] ignored written policy so he could conduct his abrupt and curt lesson."

Finally, the ALJ found Barber's actions constituted an intentional act of misconduct, committed while on duty, and that it could have easily resulted in a disruption of public service. Barber's abrupt lesson could have caused serious issues depending upon the reaction of Rios. Therefore, the ALJ found the penalty of dismissal appropriate. The SPB adopted the ALJ's decision.

Barber filed a petition for rehearing with the SPB on the ground the evidence did not support the allegations of the NOAA; that petition was denied.

Barber then filed a petition for writ of mandamus under Code of Civil Procedure sections 1085 and 1094.5 in the superior court. In that petition, Barber alleged that the SPB abused its discretion in upholding the decision to terminate Barber's employment because the decision was based on facts other than those alleged in the NOAA. As a result, Barber alleged he was not afforded an opportunity to present mitigating factors and argue against the penalty of discharge from employment.

After the SPB and CDCR filed their respective answers and supporting points and authorities, the trial court conducted a hearing and denied the petition for writ of mandamus. Barber appeals from that order.

DISCUSSION

Barber contends the SPB's decision affirming the termination of his employment violates his due process right to notice and an opportunity to defend against the charges because the ALJ based his decision on facts other than those alleged in the NOAA. We agree.

The issue is this appeal raises only a question of law. Questions of law are subject to our independent review. (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 753.)

The procedures for imposing discipline on a state employee require the employer, in this case CDCR, to determine whether there is cause for discipline and, if so, what discipline to impose. (§ 19574.) To comply with due process, the employer must give the employee notice of and reasons for the proposed disciplinary action and give the employee an opportunity to respond. (*Ibid.*; *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215.)

According to the NOAA, CDCR determined Barber "punched" Rios and attempted to strike him multiple times thereafter. Based on that conduct, CDCR terminated Barber's employment. The ALJ found that CDCR did not prove that allegation, and instead found that the evidence showed Barber "poked" Rios with either his hand or a rolled up paper. That act, in the ALJ's view, was sufficient to warrant termination of Barber's employment.

The NOAA did not put Barber on notice that his employment could be terminated because he had "poked" Rios. CDCR claims that by alleging that Barber violated the

zero-tolerance violence provision of the Youth Authority Manual, the NOAA did comply with the requirements of due process. We disagree.

"Due Process requires that the respondent be given 'notice . . . of the standards by which his conduct is to be measured' [citation] and 'fair notice as to the reach of the [disciplinary] procedure.' [Citation.] That requires that the respondent be given adequate notice both of the claimed legal standard *and the events which are alleged to contravene it* and an opportunity to challenge them. Where the cause alleged has potential application to a broad range of conduct, such as unprofessional conduct, the events alleged to contravene the charge do more than allege what must be proved. They also provide criteria by which the charge is narrowed." (*Brown v. State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1164, fn. 5, italics added.)

According to the above quoted authority, the ALJ was not at liberty to terminate Barber's employment for reasons other than those alleged in the NOAA. Barber was entitled to notice not only of the rules he had violated, but also the manner in which the violation occurred. Without that notice, he was deprived of his due process right to prepare an effective defense against the charge and to argue the appropriate punishment.

The NOAA charged that Barber was dishonest when he denied "punching" Rios in his upper torso and when he misrepresented the physical contact he had with Rios. Specifically, Barber's claim, that his "contact with Rios was made in a joking manner by reaching out and lightly touching Rios," was dishonest. From those factual allegations, it is clear that CDCR relied exclusively on Barber's alleged act of "punching" Rios and then lying about it as the conduct that warranted terminating his employment. Barber

8

was not put on notice that his act of poking Rios could also support termination of his employment. Therefore, we will reverse the judgment and remand the matter to the trial court.

## DISPOSITION

The judgment is reversed. The trial court is directed to issue a peremptory writ of mandate directing the State Personnel Board to set aside its decision sustaining the action of dismissal taken by the Department of Corrections and Rehabilitation against Patrick Barber, and to accord him any other relief to which he is entitled.

Costs on appeal are awarded to appellant.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


RICHLI
J.


CODRINGTON
J.