Filed 8/26/20  Theriault v. Cal. State Personnel Board CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DONALD THERIAULT, | |
| Plaintiff and Appellant, | E073519 |
| v. | (Super.Ct.No. RIC1821770) |
| CALIFORNIA STATE PERSONNEL BOARD et al., | OPINION |
| Defendants and Respondents; | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Real Parties in Interest and Respondents | |

APPEAL from the Superior Court of Riverside County.  Chad W. Firetag, Judge.

Affirmed.

Tyler L. Talbot for Plaintiff and Appellant.

Alvin Gittisriboongul, Chief Counsel, Chian He, Senior Attorney for Defendants and Respondents.

Janie Hickok Siess for Real Parties in Interest and Respondents,

Plaintiff, Donald Theriault, appealed a decision by the State Personnel Board (SPD) imposing a 24-day suspension without pay as discipline for various acts committed in the course of his employment as a correctional officer for the Department of Corrections and Rehabilitation (DCR). Following the administrative appeal, the administrative law judge (ALJ) affirmed the discipline. Plaintiff then filed a petition for writ of administrative mandamus in the Superior Court seeking to set aside the decision by the administrative law judge. The Superior Court denied the petition, and this appeal followed.

On appeal, plaintiff asserts (1) his due process rights were violated based on a true finding on one allegation based on a slight variance in the facts; (2) that the penalty imposed was not just and proper. We affirm.

## BACKGROUND

Correctional Officer C. Santa Cruz (Santa Cruz) works as a transportation officer for the DCR at California Institute for Women (CIW), where she transports inmates to and from CIW to outside medical facilities for medical treatment. Beginning in February 2016, Santa Cruz was assigned as partner to Plaintiff.

2

In approximately November 2016, after transporting inmates to Riverside University Health System (RUHS) for medical treatment, Santa Cruz felt Plaintiff touch her hair, pulling it. Santa Cruz has long hair, so, to meet grooming standards for correctional officers, she wore it in a bun, although she referred to it as her ponytail. Correctional Officer Cooper (Cooper)[1] and two Riverside County Sheriff's deputies were present at the time. Santa Cruz was shocked and embarrassed by the act because it was the first time this had happened, and because Cooper and one of the sheriff's deputies appeared to be shocked also. However, she did not report it because plaintiff explained he was getting something out of her hair.[2]

Cooper did report the incident to her sergeant, first verbally and later in writing, along with other complaints about plaintiff.

In January 2017, Santa Cruz and plaintiff, who were still working together, transported inmates from Puerta La Cruz, a prison camp, to CIW for medical appointments. After dropping the inmates off, they went to re-fuel the van just outside the perimeter, and then returned to CIW to pick up the inmates.

---

[1] Cooper verbally reported this incident initally, which, according to her testimony, led to plaintiff calling her a "bitch" when he was informed of the complaint. However, the ALJ found Cooper's account, in which she testified that Santa Cruz's head was jerked back when plaintiff pulled her hair and that Santa Cruz had tears in her eyes over the hair pulling incident, was exaggerated and that her testimony about plaintiff calling her a bitch was unreliable. We therefore omit reference to her testimony as to the details of the incident.

[2] Plaintiff testified he had done this in the past to remove leaves or toilet paper from Santa Cruz's hair, but Santa Cruz denied he had ever touched her hair in the past. It would have been memorable if someone found toilet paper in another's hair.

3

When they returned to the institution, Santa Cruz went into the reception center to escort the inmates, but they were not ready because the Investigative Services Unit (ISU) was scanning them, which meant something was going on with the inmates. ISU normally investigates inmates over phones and drugs. Plaintiff waited in the van because, as a male correctional officer, he could not participate in strip or pat searches of female inmates. Due to the scanning by ISU, it took longer than usual. Santa Cruz waited approximately 45 minutes for the inmates to be ready for transport.

Upon reaching the vehicle, plaintiff exited the van and demanded, "Where have you been, you fucking bitch? I have been looking everywhere for you. I can't believe you are milking the state for money, you cunt." Thereafter, they got into the van and started on the return trip.

After they departed with the inmates, Plaintiff and Santa Cruz drove in silence to Puerta La Cruz where they dropped off inmates, at which time Correctional Officer Barajas (Barajas) contacted Santa Cruz to say that his partner, Correctional Officer Hernandez (Hernandez), needed to meet and talk with plaintiff but had been unable to reach him. Santa Cruz informed Barajas they could meet at Waba Grill in Temecula. Once at Waba Grill, Santa Cruz and plaintiff got their food orders and used the restrooms, and when plaintiff was done eating, he asked Santa Cruz what they were waiting for. When Santa Cruz explained they were waiting for Barajas and Hernandez, plaintiff complained he was tired of them "milking the state" and that they needed to leave. Santa Cruz called Barajas to inform him they were leaving when plaintiff began

4

yelling about her milking the state, and again calling her a "fucking cunt." Barajas, who was still on the phone with Santa Cruz at the time, heard the comments.

When they were on the road, more words were exchanged, causing Santa Cruz to start screaming at plaintiff to "shut the fuck up" and "leave me alone." When they reached CIW, Santa Cruz started to cry and reported the incident. From that point on, plaintiff was no longer assigned as Santa Cruz's partner. For her outburst, Santa Cruz received a letter of instruction, which would stay in her personnel file for one year, for violating ethics and professionalism regulations regarding the treatment of others.

On September 28, 2017, plaintiff was served with a Notice of Adverse Action pursuant to Government Code[3], section 19574, informing him of his suspension for 24 qualifying work days, effective from October 9, 2017 to November 9, 2017. The notice stated three grounds for the adverse action: inexcusable neglect of duty (§ 19574, subd. (d)); discourteous treatment of the public or other employees (§ 19574, subd. (m)); and other failure of good behavior during or outside duty hours which is of such a nature as to cause discredit to the appointing authority of the person's employment. (§ 19574, subd. (t).)

On October 17, 2017, plaintiff appealed the adverse action. At the hearing on the appeal, plaintiff stipulated that he was unprofessional by using profane language against Santa Cruz and that he was discourteous. The ALJ heard the testimony of Cooper and

---

[3] All further statutory references are to the Government Code, unless otherwise stated.

5

Santa Cruz, as well as plaintiff's testimony, offered in his own defense.  He denied

calling Cooper a bitch  and denied other conduct of which Cooper had accused him.[4]

However, just after the interaction with Cooper (in which he denied calling her a

name), he became aware that Sergeant Cheatham, the sergeant assigned to RUHS, was

following plaintiff and Santa Cruz back to CIW, where he met with plaintiff and Sergeant

Newborg, the transportation sergeant at CIW, to confront plaintiff about "cussing" at

Cooper.[5]

Plaintiff denied calling Cooper a bitch and denied pulling Santa Cruz's hair.

However, he admitted he pulled something out of her hair, explaining he had done so on

previous occasions, to remove leaves or toilet paper.  Plaintiff admitting using profanity

and apologized, explaining that things got out of control on both their parts.  Plaintiff also

acknowledged that in 2014 he had received a prior Notice of Adverse Action for being

discourteous to a female sergeant.

The ALJ took the matter under submission  and issued a written proposed decision

on March 28, 2018.  The ALJ noted plaintiff had conceded using offensive language on

one occasion, but denied the remaining allegations.  The ALJ also noted that plaintiff had

received a prior adverse action in December 2014, for which he had been penalized with

a 10 percent reduction in salary for 12 pay periods.

---

[4] Cooper testified that she had reported several aspects of plaintiff's conduct while at work in her report on the hair incident, including that inmates complained he drove recklessly while transporting them, stayed in the van when he should have been assisting his partner, and failed to bring in medical kits.

[5] In certain respects, this corroborates Cooper's testimony.

As for credibility determinations, the ALJ found plaintiff did not dispute Santa Cruz's testimony; however, he found that Santa Cruz contradicted Cooper's testimony about the hair pulling incident, and Cooper's testimony was unreliable with respect to the incident in which plaintiff was alleged to have called Cooper a bitch. Based on Santa Cruz's testimony, the ALJ sustained all three allegations set forth in the Notice of Adverse Action. Regarding penalty, ALJ found plaintiff's misconduct was serious because his actions resulted in harm to the public service, and damaged his professional reputation, discrediting plaintiff as a Correctional Officer through his hostile behavior towards Santa Cruz. The ALJ further found plaintiff had usurped Santa Cruz's authority by yelling at her and insulting her in the presence of female inmates.

Additionally, the ALJ found plaintiff had insulted Santa Cruz using obscene language specifically offensive to women at an institution housing female inmates. The ALJ concluded plaintiff's actions reflected poorly on himself and DCR. The ALJ was also troubled by plaintiff's prior adverse action, which occurred only four years prior and was based on his insubordination and discourteous behavior towards his female Correctional Sergeant, and indicated a likelihood of recurrence.

The ALJ then made the following conclusions of law: (1) plaintiff's conduct constituted grounds for discipline pursuant to section 19572, subdivisions (d), (m), and (t); and (2) the penalty of suspension for 24 days without pay is appropriate. On May 17, 2018, the SPD adopted the findings of fact and conclusions of law by the ALJ. Plaintiff sought a rehearing, but his petition for rehearing was denied.

7

Plaintiff filed a petition for writ of administrative mandamus. On July 2, 2019, the superior court denied the petition and entered judgment in favor of the SPD and DCR. On August 16, 2019, plaintiff appealed.

## DISCUSSION

Plaintiff first argues that his due process rights were violated by "a change in the ponytail pull allegation", and the denial of his writ petition based on due process violation as well as insufficient evidence to support the ALJ's findings, which had formed the basis for the superior court's ruling on the petition. He also challenges the penalty imposed. Although the due process argument is combined with the challenges related to the sufficiency of the evidence, we will treat them separately, and then will proceed to his challenge to the penalty imposed.

1. *There Was No Due Process Violation.*

a. *Background*

Plaintiff's due process challenge focuses on the fact that the Notice of Adverse Action referred to a "ponytail pulling" allegation involving the incident at the RUHS in the November 2016. Specifically, the allegation stated plaintiff had grabbed Santa Cruz's ponytail and pulled her head back. During the testimonial portion of the appeal, Cooper described seeing plaintiff grab Santa Cruz's ponytail and pull her backwards Cooper repeated on cross-examination that Santa Cruz's hair was in a ponytail, but later clarified that the hair was basically in a bun, a ponytail that was twisted into a bun, that came undone when plaintiff pulled it.

8

Although Santa Cruz contradicted Cooper in certain details, such as, whether her head jerked backwards or she cried, she also described her bun as a ponytail and indicated the terms were used interchangeably. Significantly, both Cooper and Santa Cruz testified to the same incident, occurring at RUHS in November 2016, and plaintiff himself acknowledged there was an incident with Santa Cruz's hair that occurred at that time and place.

Plaintiff asserts that the ALJ improperly changed the language of the charges against him in finding that plaintiff pulled something from Sant Cruz's hair, as opposed to pulling a ponytail, thereby violating his due process right to notice of the charges against which he would have to defend himself. We disagree.

b.      *Standard of Review*

A due process challenge to the procedural fairness of an administrative hearing is reviewed de novo on appeal because the ultimate determination amounts to a question of law. (*Palmieri v. State Personnel Bd.* (2018) 28 Cal.App.5th 845, 852, citing *Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482.)

c.      *Analysis*

The California and United States Constitutions compel the government to afford persons due process before depriving them of any property interest. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) "[T]he California statutory scheme regulating civil service employment confers upon an individual who achieves the status of

9

'permanent employee' a property interest in the continuation of his employment which is protected by due process." (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 206.)

The essence of procedural due process is notice and an opportunity to respond. (*Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, 546 [105 S.Ct. 1487, 1495, 84 L.Ed.2d 494, 506].)  "'The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing."'  [Citation.]" (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1279.)

"The requirements of due process are flexible, especially where administrative procedure is concerned." (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1037; see also *Gilbert v. City of Sunnyvale, supra,* 130 Cal.App.4th at p. 1276.) However, a "public employee is entitled to oral or written notice of the charges against him, *an explanation of the employer's evidence*, and an opportunity to present his side of the story." (*Gilbert v. City of Sunnyvale, supra,* 130 Cal.App.4th at p. 1277.)

The grounds and means of discipline of a state employee are governed by statute. An adverse action may be taken against an employee only for a "cause for discipline specified in this article." (§ 19571.)  The causes so specified are to be found in section 19572. (*Negrete v. State Pers. Bd.* (1989) 213 Cal.App.3d 1160, 1165.)

The procedure by which a permanent employee may be dismissed or otherwise disciplined is described in sections 19574 through 19588.  The requirements of a formal notice of adverse action are provided in section 19574.  "Under section 19574 . . . the

appointing power *must* serve upon the employee and file with the Board a written notice specifying:  (1) the nature of the punishment, (2) its effective date, (3) the causes therefor, (4) [a statement advising the employee of the right to answer the charges], and (5) the employee's right to appeal."**6**  (*State Personnel Bd. v. Department of Personnel Admin.* (2005) 37 Cal.4th 512, 521, quoting § 19574; *California Sch. Employees Assn. v. Personnel Commission* (1970) 3 Cal.3d 139, 144, fn. 2.)

"No particular form of notice is required."  (*Skelly v. State Personnel Board*, *supra*, 15 Cal.3d at p. 203, citing 29 Ops.Cal.Atty.Gen. 115, 120 (1957).)  "In an opinion issued on March 26, 1953, the Attorney General described the 'statement of causes' as follows:  'Such statement of causes is not merely a statement of the statutory grounds for punitive action set forth in section 19572 but is a factual statement of the grounds of discipline which, although not necessarily pleaded with all the niceties of a complaint in a civil action or of an information or indictment in a criminal action, should be detailed enough to permit the employee to identify the transaction, to understand the nature of the alleged offense and to obtain and produce the facts in opposition [citations].'"  (*Skelly v. State Personnel Board, supra*, 15 Cal.3d at p. 203, fn. 15, quoting 21 Ops.Cal.Atty.Gen. 132, 137 (1953).)

Allegations of misconduct are sufficiently specific if they permit the accused to identify the transaction, understand the nature of the alleged offense, and prepare and

---

**6** "Appointing authority" or "appointing power" means a person or group having authority to make appointments to positions in the state civil service. (§ 18524.)  Here, the Secretary of the DCR is plaintiff's appointing power.

present his defense.  (*Hostetter v. Alderson* (1952) 38 Cal.2d 499, 502, citing *Gipner v. State Civil Service Com.* (1936) 13 Cal.App.2d 100, 107.)  In determining whether the "charges" meet the minimum requirements of due process, we observe that the specific requirement pertains to "written notice of the charges against him," and the "explanation of the employer's evidence."  Generally, references to "charges" against an employee relate the statutory grounds for discipline, referred to as the "causes."

This interpretation finds support in *Brown v. State Pers. Bd.* (1985) 166 Cal.App.3d 1151, 1164, where the court stated that the discipline of an employee of the California State University and Colleges must be predicated upon a "'statement of cause [*and*] the events or transactions upon which the causes are based . . . ,'" citing Education Code, section 89538.  There, an employee was charged with a "*pattern* of sexual harassment" (italics added) as a ground for dismissal, although, based on the evidence, only one such incident was sustained.  Under these circumstances, the court held the evidence was insufficient to satisfy the grounds for dismissal.  (*Brown v. State Pers. Bd.* (1985) 166 Cal.App.3d 1151, 1163.)[7]

---

[7]  Plaintiff cites *Brown v. State Pers. Bd., supra,* 166 Cal.App.3d at page 1164, for the proposition that the Board may not alter the charging document or take action upon a charge not made.  However, the *Brown* case was decided on a substantial evidence review, not a due process claim, and is therefore not authority for the proposition for which it was cited.  (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134, quoting *In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 ["""cases are not authority for propositions not considered.""'].)  The language in *Brown* appears in the context of the court's analysis of whether discipline was proper where a "series or pattern" of unwanted sexual advances against several female students had been charged, but where only one instance of the employee propositioning a student was sustained.  Given the fact the university had no rules prohibiting faculty and students from dating, living together, or

Pertinent to the instant matter, the Notice of Adverse Action includes a section entitled "Statement of Causes," which lists the statutory grounds on which the SPD relied in taking the adverse action. The references to the instances of misconduct alleged to support the charges are set out in the section entitled "Statement of Facts," where the alleged incidents of misconduct are described.

With respect for the statutory bases, or causes, for his discipline, plaintiff does not claim that the language of the subdivisions of section 19574 with which he was charged was vague, ambiguous, or unclear. He was familiar with the code of conduct applicable to correctional officers. He does not argue that calling a female coworker a "bitch" or a "cunt" does not constitute a violation of the statutory grounds with which he was charged, nor does he argue that he was not put on notice of the specific instances of his conduct that formed the basis for the charges against him.

Indeed, at the time of each act, he was made aware that his conduct had been reported to his supervising sergeants and, in his testimony, he acknowledged being confronted by his superiors with the reports relating to the specific conduct near in time to the reports. Instead, he asserts the ALJ improperly changed the allegations relating to the facts of the misconduct from "pulling the ponytail" to "touching the hair." In this respect, plaintiff is in error because the charges against him were stated using the statutory language and were not changed.

---

marrying (*Brown.,* at p. 1163), the court concluded that a charge of committing a series of acts of sexual harassment could not stand in the face of a single sustained event or transaction.

13

The fact that certain incidents were set forth as the basis for those charges, and the evidence suggested that the "ponytail" was not pulled, *per se*, does not rise to the level of a due process violation, where the nature of the conduct as found by the ALJ nonetheless supported the finding on the actual statutory charge and plaintiff was on notice of the specific instances of conduct on which the charges were based. In other words, the charges of violating various subdivisions of section 19574 were sustained even though the evidence was deemed sufficient to prove only that he touched Santa Cruz's hair inappropriately.

Plaintiff was properly charged by way of the Notice of Adverse Action, which specified the three statutory grounds—or causes—for discipline, against which he would need to prepare his defense. The factual underpinnings of those charges, set forth in the Statement of Facts contained in the Notice, constituted the "events or transactions" upon which the causes were based. As such, plaintiff had adequate notice of the charges against him. Because the ALJ did not alter the charges, the superior court did not err in denying the petition based on any due process violation.

2.     *There is Substantial Evidence to Support the Judgment.*

Plaintiff argues there is insufficient evidence to support the decision of the ALJ because there is no evidence his conduct was malicious and because Santa Cruz did not consider it misconduct. He then argues there was insufficient evidence to warrant the denial of his petition for writ of administrative mandamus. We disagree.

14

a.      *Standard of Review*

Under Code of Civil Procedure section 1094.5 judicial review of a final administrative decision "shall extend to the questions whether the respondent [agency] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (Code Civ. Proc., § 1094.5, subd. (b); *Fisher v. State Personnel Bd*. (2018) 25 Cal.App.5th 1, 13.)

Review of disciplinary action by an appointing authority is directed in the first instance to the State Personnel Board, which acts as an adjudicatory body, weighing the evidence to determine the facts and exercising discretion to ascertain whether the charges sustained are sufficient for the discipline imposed.  (*Cate v. State Personnel Bd*. (2012) 204 Cal.App.4th 270, 281.)

The SPB's decision may then be reviewed by the superior court by way of a petition for writ of administrative mandamus.  (Code Civ. Proc., § 1094.5.)  The trial court reviews decisions of the SPB for substantial evidence, considering "''"all relevant evidence in the administrative record including evidence that fairly detracts from the evidence supporting the agency's decision." [Citations.]' [Citation.]" (*Cate v. State Personnel Bd., supra*, 204 Cal.App.4th at p. 281, quoting *California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 585.)

15

When a petition for writ of administrative mandate challenges an agency's decision affecting a fundamental right, the trial court must exercise its independent judgment to determine whether the agency's findings are supported by the weight of the evidence. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10; *Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 626.)

"The scope of our review from a judgment on a petition for writ of mandate is the same as that of the trial court. [Citations.]" (*Cate v. State Personnel Bd., supra,* 204 Cal.App.4th at p. 282.) To the extent factual questions are involved, the [SPB's] findings of fact are reviewed under the substantial evidence test." (*Department of Corrections & Rehabilitation v. State Personnel Bd*. (2015) 238 Cal.App.4th 710, 716.)

b.    *Analysis*

The ALJ sustained the adverse action on all three charged grounds:  neglect of duty, discourteous treatment, and other failure of good behavior that causes discredit to the appointing authority or the person's employment.  (§ 19572, subds. (d), (m), (t).)

Section 19572 sets out the various causes for which a permanent employee may be subject to adverse action, including, but not limited to, inexcusable neglect of duty (§ 19572, subd. (d)); discourteous treatment of the public or other employees (§ 19572, subd. (m)); and the failure of good behavior either during or outside of duty hours, which is of such a nature that it causes discredit to the appointing authority or the person's employment.  (§ 19572, subd. (t).)

16

"'Neglect of duty' means the careless or intentional failure to exercise due diligence in the performance of an official duty, the degree of care depending on the character of the duty, and includes, therefore, wil[l]ful neglect and such forms of misfeasance and malfeasance as involve a failure in the performance of the duties required by law." (*Rapaport v. Civil Service Com.* (1933) 134 Cal.App. 319, 323.) The ALJ found that plaintiff's use of indecent and abusive language towards Santa Cruz, which plaintiff did not dispute, constituted neglect of duty, where DCR and SPB policies prohibit such conduct. There is no need to prove malicious conduct and plaintiff cites no authority for his position to the contrary.

"Discourteous treatment" covers a fairly broad range of behavior, but where a superior unjustifiably abuses a subordinate concerning the manner in which he or she performs his or her job, may support a finding of discourteous treatment, even when committed during off-duty hours. (*Blake v. State Personnel Board* (1972) 25 Cal.App.3d 541, 550.) Here, the record amply supports the ALJ's finding that plaintiff engaged in discourteous treatment by speaking to Santa Cruz in a hostile and indecent manner, and in embarrassing her in front the presence of Cooper and the two sheriff's deputies. Whether he pulled her ponytail or removed something from her hair, there was no dispute that she was shocked and embarrassed by the contact and she could see that the others were shocked, as well. Plaintiff admitted committing the act so there is no basis for finding insufficient evidence on this charge.

17

Finally, to qualify as actionable "failure of good behavior", the misconduct must bear some rational relationship to his employment and must be of such character that it can easily result in the impairment or disruption of the public service or be detrimental to state service. (*Yancey v. State Personnel Bd.* (1985) 167 Cal.App.3d 478, 483.) The ALJ found that plaintiff's use of profane and derogatory language while addressing Santa Cruz created a hostile work environment for women correctional officers, and, because it occurred while transporting female inmates, his conduct could be seen as representative of male correctional officers in general, and thereby be detrimental to state service.

Plaintiff did not dispute that the hostile exchange occurred or that he used profane and indecent language in addressing Santa Cruz while transporting female inmates. There is no requirement that the discourteous treatment be malicious in order to be actionable. There is substantial evidence in the administrative record to support this allegation.

In other words, notwithstanding the fact the ALJ determined that the hair incident involved touching or pulling something from Santa Cruz's hair, as opposed to pulling a ponytail, there was substantial evidence to support the findings on the three statutory charges for discipline.

3. *The Penalty Imposed Was Proper.*

Plaintiff argues that the imposition of the original penalty imposed in the Notice of Adverse Action was an abuse of discretion because one of the three allegations against Appellant was unfounded, requiring that it be modified. We disagree.

18

First, as we have explained above, the ALJ properly sustained all three allegations against plaintiff, notwithstanding Cooper's exaggeration. But even if one of the allegations had been dismissed, it was not an abuse of discretion.

The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. (*Barber v. State Personnel Board* (1976) 18 Cal.3d 395, 404, citing *Skelly v. State Personnel Bd., supra,* 15 Cal.3d at p. 217, fn. 31; *Magit v. Board of Medical Examiners* (1961) 57 Cal.2d 74, 87.) Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. (*Nightingale v. State Personnel Board* (1972) 7 Cal.3d 507, 515.) The administrative determination will not be disturbed absent an abuse of discretion. (*Ramirez v. State Pers. Bd.* (1988) 204 Cal.App.3d 288, 294, citing *Barber v. State Personnel Bd., supra,* 18 Cal.3d at p. 404.)

According to *Skelly, supra,* the factors to be considered by the SPB in the determination of the penalty include the "extent to which the employee's conduct resulted in, or if repeated is likely to result in. '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly, supra*, 15 Cal.3d at p. 218.)

In the present case, plaintiff faced multiple allegations of misconduct based on two separate incidents in which he demonstrated disdain for his partner, female Correctional Officer Santa Cruz. The ALJ concluded the misconduct was likely to recur because

19

plaintiff had faced prior charges of misconduct in the disrespectful behavior towards a female sergeant, his superior officer.

Plaintiff does not argue he did not do harm to the public service and does not dispute that he was previously penalized by ten percent reduction in pay for 12 months for similar conduct. While he is of the opinion that his penalty was disproportional to his conduct considering the ALJ's finding that the hair pulling was instead a pulling of something from Santa Cruz's hair, he fails to appreciate the gravity of his conduct.

The ALJ found the misconduct was serious and usurped Santa Cruz's authority insofar as the hostile and degrading treatment of his partner was concerned. In addition, the hair incident embarrassed Santa Cruz and shocked all who witnessed it. The prior penalty, involving a reduction in pay, was severe, but was ineffective in modifying plaintiff's behavior, giving rise to the ALJ's conclusion the misconduct was likely to recur. For that reason, the suspension was affirmed by the ALJ. We also observe that plaintiff's inability to recognize the seriousness of his misconduct likewise increases the odds of recurrence.

Under the circumstances, the trial court was not free to substitute its judgment for that of the administrative body, and neither are we. There was no abuse of discretion.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
                              P. J.

We concur:

CODRINGTON_____
                    J.

RAPHAEL_____
                    J.

21