Filed 12/10/20

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MALAGA COUNTY WATER DISTRICT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> STATE WATER RESOURCES CONTROL BOARD et al., <br><br> Defendants and Respondents. | F075868 <br><br> (Super. Ct. No. MCV071280) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Madera County. James E. Oakley, Judge.

Costanzo & Associates and Neal E. Costanzo for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Robert W. Byrne, Assistant Attorney General, Eric M. Katz and Adam L. Levitan, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

This is one of several cases before this court involving disputes between the Malaga County Water District (Malaga) and the agencies involved in issuing and enforcing the permits necessary for Malaga to operate its waste treatment facility. In this case, the Central Valley Regional Water Quality Control Board (Water Quality Board)

imposed penalties totaling $78,000[1] on Malaga for violating the water discharge requirements of its permit. Through an administrative writ review, Malaga contends these penalties were inappropriately imposed for several reasons. For the reasons set forth below, we agree with Malaga that laches is a proper defense in administrative sanctions proceedings, and that the Water Quality Board utilized a void underground regulation when it issued the "Hearing Procedure for Administrative Civil Liability Complaint R5-2013-0527" (Hearing Procedure) in this case. (Some capitalization omitted.) The first issue may only affect some of the penalties imposed by the Water Quality Board while the second may require a full rehearing. The trial court previously concluded that laches was not a defense and the Hearing Procedure was not an underground regulation. We therefore reverse the trial court's order and remand the matter to the trial court to determine whether a writ should issue based on one or both of Malaga's right to present a laches defense and the Water Quality Board's use of a void underground regulation via the Hearing Procedure. In all other respects, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

This case follows a determination by the Water Quality Board that Malaga had violated certain wastewater discharge requirements and an accompanying $78,000 total penalty. The formal administrative proceedings began on May 1, 2013, with the filing of an administrative civil liability complaint (complaint). Attached to the complaint was a list summarizing the purported violations, created by Water Quality Board staff members, reflecting several violations occurring between 2007 and 2011.

These violations were initially identified to Malaga through a July 8, 2010 notice of violation and a subsequent November 5, 2010 revised notice of violation. A new notice of violation and draft record of violations issued December 9, 2011, identifying

---

[1] During these proceedings, the total penalty was modified to $75,000.

alleged violations occurring between March 14, 2008, and October 30, 2011. The complaint also stated that Malaga had additional violations between February 1, 2004, and March 13, 2008, that were subject to mandatory minimum penalties. Malaga contends that it responded to each of the notices of violation at issue in this case, but that its responses did not lead to further dialog. It also notes that early violations occurring between 2008 and 2010 were purportedly addressed and suspended prior to these notices, provided Malaga completed certain compliance projects.

At some point prior to the administrative hearing, Malaga was provided with the Hearing Procedure that would be utilized. Malaga claims the document was not timely provided, being received by Malaga on May 6, 2013, and counsel on May 16, 2013, despite having deadlines of May 10, 2013, for objections. The document further limited the time to present to 30 minutes for each side and stated that all evidence other than witness testimony, all witness lists, and all legal and technical arguments must be submitted in advance of the hearing to the Prosecution Team or the Advisory Team.

Malaga objected to the Hearing Procedure. Responses to these objections suggested the Hearing Procedure was adopted in 2012 by the chairman of Water Quality Board, but that various deadlines may have been set by the Prosecution Team based on formulas provided by the Water Quality Board. A senior counsel on the Advisory Team, David Coupe, provided an email that summarized prior rulings by the chairman stating the procedures were appropriate.

Malaga also objected to the Prosecution Team submitting any evidence in the case, claiming it was irrelevant because the proceedings were barred by laches. Coupe's email summarized a ruling that the evidence was not irrelevant under the statutory scheme, but it also modified the Hearing Procedure to allow for an additional 10 minutes per side to argue the laches issue.

The administrative hearing occurred on July 25, 2013. At that hearing, Malaga raised objections to Coupe's opinions and the Hearing Procedure. These objections were

3.

overruled by the Chairman of the Water Quality Board, Dr. Karl Longley. Malaga also objected to several filings and a prior State Water Resources Control Board (State Water Board) decision in an unrelated case that was submitted for review. These objections were also overruled.

With respect to the evidence presented, the Prosecution Team primarily relied upon Lonnie Wass. Wass provided a summary of the known violations compiled by Water Quality Board staff from Malaga's self-monitoring reports, provided his opinion on why certain violations required imposition of mandatory minimum penalties, and explained why the total violation penalty recommendation was $78,000. Malaga made objections to the testimony, which were overruled by Chairman Longley. A later motion to strike Wass's testimony was also overruled by Chairman Longley.

Malaga then cross-examined Wass on his testimony. Wass confirmed that he could not identify specific documents supporting his summary but was relying on staff efforts to compile the violations from Malaga's self-monitoring reports. As Malaga's cross-examination continued, the Prosecution Team raised objections. These were generally, but not universally, sustained by Chairman Longley, a point Malaga contends affected its opportunity to cross-examine the witness.

Malaga's president, Charles Garabedian, testified on behalf of the company. He testified that due to the delay in proceedings, Malaga had lost the ability to determine who had caused the effluent violations and therefore could not shift the cost of the penalties to the polluter. He further testified that the proposed penalty was around 15 percent of Malaga's budget, and that Malaga could not afford to pay such a penalty. Malaga claims that it was precluded from presenting additional evidence about its claimed inability to pay, in part because the Water Quality Board voted to approve an opinion Coupe provided that a laches defense was not valid.

The Water Quality Board ultimately imposed the recommended $78,000 penalty without granting any of the relief options available when penalties are issued to rural

wastewater treatment facilities serving small communities. The order entered parroted the language of the complaint, with additional language rejecting the laches claim. Malaga petitioned the State Water Board for review of this order. This petition was dismissed by the executive director of the State Water Board for failing "to raise substantial issues that are appropriate for review by the State Water [] Board." Malaga then filed a petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. The trial court concluded that laches was not a defense to the assertions brought by the Water Quality Board, and otherwise concluded no substantive or procedural errors arose in the proceedings. This appeal timely followed.

## DISCUSSION

Malaga's brief identifies three main contentions and includes several subparts, some of which are well defined and some of which are not. At the highest level, Malaga first contends the trial court wrongly concluded that laches is not a defense in the underlying administrative proceedings. Further, Malaga argues that laches should arise after a one-year delay in prosecution, and, under that period, all claims brought against Malaga were improper. Next, Malaga contends the Water Quality Board violated the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.) in multiple ways, with the result being that Malaga did not receive a fair trial. Finally, Malaga contends that only hearsay evidence was used to support the Water Quality Board's conclusion. Malaga argues that relying on hearsay evidence in this context is improper and precludes the Water Quality Board from finding any violations.

### *Standard of Review*

Decisions made by the Water Quality Board or the State Water Board may be reviewed by way of a writ of mandate. (Wat. Code, § 13330, subds. (a), (b).)[2] These writ proceedings are governed by Code of Civil Procedure section 1094.5. (Wat. Code,

---

**2**      Undesignated statutory references are to the Water Code.

5.

§ 13330, subd. (e).)  In such proceedings, the trial court's review "shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).)  An abuse of discretion can occur three different ways:  (1) "the respondent has not proceeded in the manner required by law," (2) the "decision is not supported by the findings," or (3) "the findings are not supported by the evidence." (*Ibid.*)

The primary issue in this appeal is Malaga's contention that the Water Quality Board and trial court wrongly determined, as a matter of law, that laches is not a defense to the administrative proceedings at issue.  As this determination is purely legal in nature, we utilize a de novo review.  (See *Hoag Memorial Hospital Presbyterian v. Kent* (2019) 36 Cal.App.5th 413, 421 [" 'If a question of law is presented, we undertake a de novo review of the [agency's] ruling' "]; *Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 522 ["Issues of law raised in a petition for a writ of administrative mandate, including the interpretation of applicable statutes or regulations, are for the courts to resolve de novo"].)

Malaga also contends, identifying various issues, that it did not receive a fair trial in its administrative proceedings.  We also " 'review the fairness of the administrative proceeding de novo.' (*Doe v. University of Southern California*, [(2018)] 28 Cal.App.5th [26,] 34; see *Doe v. University of Southern California* (2016) 246 Cal.App.4th 221, 239 [' "challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law" '].)  Code of Civil Procedure section 1094.5, subdivision (b)'s 'requirement of a " 'fair trial' " means that there must have been "a fair administrative hearing." ' (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 96.)" (*Lateef v. City of Madera* (2020) 45 Cal.App.5th 245, 252.)

6.

Finally, Malaga argues there was insufficient evidence to support the penalties issued. Central to this contention is the assertion that the Water Quality Board relied exclusively on hearsay evidence to reach its conclusion. "In determining whether administrative findings are supported by the evidence, the superior court applies one of two tests: (1) independent judgment or (2) substantial evidence. (§ 1094.5, subd. (c).) The appropriate test depends on the nature of the right affected by the agency's action or decision …." (*Nathan G. v. Clovis Unified School Dist.* (2014) 224 Cal.App.4th 1393, 1403.) "Courts decide whether an administrative decision substantially affects a fundamental vested right on a case-by-case basis.… ' "The ultimate question … is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking judicial power." ' " (*Nathan G.*, at p. 1404, italics omitted.)

Malaga argues for an independent judgment review, contending a "permit gives rise to a fundamental vested right to operate under the permit," and that any administrative decision affecting the permit thus requires an independent review. We do not agree. As the State Water Board points out, there can be no vested right to pollute the waterways, and the statutory scheme appears to specifically preclude an independent review for writ proceedings following a decision or order issued under section 13323. (§§ 13263, subd. (g) ["No discharge of waste into the waters of the state, whether or not the discharge is made pursuant to waste discharge requirements, shall create a vested right to continue the discharge. All discharges of waste into waters of the state are privileges, not rights"], 13330, subd. (e) ["Except as provided in this section, Section 1094.5 of the Code of Civil Procedure shall govern proceedings for which petitions are filed pursuant to this section. For the purposes of subdivision (c) of Section 1094.5 of the Code of Civil Procedure, the court shall exercise its independent judgment on the evidence in any case involving the judicial review of a decision or order of the state board issued under Section 13320, or a decision or order of a regional board

7.

for which the state board denies review under Section 13320, other than a decision or order issued under Section 13323"].)  Moreover, the case law shows that other, more fundamental, water rights are subject to the substantial evidence review when violated. (See *Stanford Vina Ranch Irrigation Co. v. State of California* (2020) 50 Cal.App.5th 976, 1005 [curtailment orders affecting pre-1914 riparian water rights do not affect fundamental rights and are thus subject to substantial evidence review].)  Accordingly, we review the entire record in this case to determine whether substantial evidence supports the Water Quality Board's decision.  (50 Cal.App.5th at p. 1006.)

### ***Laches is an Equitable Defense to Violations of Section 13385***

The primary dispute in this case is whether laches is an equitable defense to administrative penalties imposed by the State Water Board or a regional board.  Both the Water Quality Board and the trial court concluded that, as a matter of statutory interpretation, laches could not apply to administrative proceedings pursued under section 13385.  Malaga argues this conclusion is wrong.  As this issue is a matter of law involving statutory interpretation, our review is de novo.  (*Hoag Memorial Hospital Presbyterian v. Kent*, *supra*, 36 Cal.App.5th at p. 421.)  In this portion of the opinion, we conclude laches is an equitable defense to penalties imposed under section 13385, and review what time period, if any, may create a presumption of laches in administrative proceedings under this section.

*Overview of laches*

Laches is an equitable principle that bars certain claims or proceedings based on a combination of unreasonable delay in pursuing the claims and prejudice based on that delay.  It is " ' "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and

8.

that the right to be free of stale claims in time comes to prevail over the right to prosecute them." ' " (*Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1521.)

This principle "has been made applicable to quasi adjudicative proceedings as a common law policy pursuant to the 'inherent power [of courts] independent of statutory provisions to dismiss an action on motion of the defendant where it is not diligently prosecuted.' " (*Brown v. State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1158 (*Brown*).) Thus, in " 'appropriate circumstances, the defense of laches may operate as a bar to a claim by a public administrative agency … *if the requirements of unreasonable delay and resulting prejudice are met.*' " (*Fountain Valley Regional Hospital & Medical Center v. Bonta* (1999) 75 Cal.App.4th 316, 323.) Notably, "delay alone does not constitute laches because '[t]he policy of this state with respect to lapse of time is [separately] embodied in statutes [of limitation].' " (*Brown*, at p. 1159.)

It is frequently recognized that there are two general ways to demonstrate unreasonable delay and resulting prejudice. In the first, the party arguing laches bears the burden of proof and is required to present evidence sufficient to tip the equitable balance toward preclusion in order to prevail. In the second, an unreasonable delay is established as a matter of law and prejudice is presumed. In this scenario, the party opposing the imposition of laches bears the burden of demonstrating there was a reasonable excuse for delay. (See *Fountain Valley Regional Hospital & Medical Center v. Bonta*, *supra*, 75 Cal.App.4th at pp. 323–324.)

As a burden shifting proposition in administrative proceedings, the second scenario discussed above is difficult to invoke. It is well understood that statutes of limitation are inapplicable to administrative proceedings. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1088.) To establish unreasonable delay as a matter of law and presume prejudice, courts "sometimes adopted for purposes of laches 'a period within which its aid must be sought similar to that prescribed in analogous cases at law.' " (*Brown*, *supra*,

9.

166 Cal.App.3d at p. 1159.) Thus, where "no statute of limitations directly applies but there is a statute of limitations governing an analogous action at law, the period may be borrowed as a measure of the outer limit of reasonable delay in determining laches." (*Id*. at pp. 1159–1160.) "Whether or not such a borrowing should occur depends upon the strength of the analogy." (*Id*. at p. 1160.)

*Overview of relevant laws*

Malaga's penalties were imposed under section 13385.[3] Subdivision (a) imposes liability upon those that violate waste discharge requirements or otherwise violate various provisions of California or federal clean water laws. Subdivisions (b) and (c) provide alternative enforcement means with differing penalties for those accused of violations. Thus, in subdivision (b), a civil action may be filed by the Attorney General that results in maximum penalties of approximately $25,000 per day. In subdivision (c), enforcement may be achieved through an administrative hearing brought "by the state board or a regional board pursuant to Article 2.5 (commencing with Section 13323) of Chapter 5," but the maximum penalties may not exceed approximately $10,000 per day.[4] Subdivision (e) provides statutory guidance for calculating the proper amount for the penalty actually imposed, including various factors to consider, with its final guidance being that at a "minimum, liability shall be assessed at a level that recovers the economic benefits, if any, derived from the acts that constitute the violation."

Relevant to the dispute in this case, subdivisions (h) and (i) identify minimum penalties to impose in specific circumstances. Thus, in subdivision (h)(1), the statute provides that "[n]otwithstanding any other provision of this division, and except as provided in subdivisions (j), (k), and (l), a mandatory minimum penalty of three thousand dollars ($3,000) shall be assessed for each serious violation." Subdivision (h)(2) defines

---

[3] Undesignated subdivisions refer to section 13385.

[4] The maximum penalties may be increased by an additional amount for larger discharges not susceptible to cleanup. (§ 13385, subd. (c)(2).)

10.

a serious violation as "any waste discharge that violates the effluent limitations contained in the applicable waste discharge requirements for a Group II pollutant, as specified in Appendix A to Section 123.45 of Title 40 of the Code of Federal Regulations, by 20 percent or more or for a Group I pollutant, as specified in Appendix A to Section 123.45 of Title 40 of the Code of Federal Regulations, by 40 percent or more."

Similarly, in subdivision (i), a mandatory minimum penalty of $3,000 is to be assessed "whenever the person does any of the following four or more times in any period of six consecutive months, except that the requirement to assess the mandatory minimum penalty shall not be applicable to the first three violations:  [¶]  (A) Violates a waste discharge requirement effluent limitation.  [¶]  (B) Fails to file a report pursuant to Section 13260.  [¶]  (C) Files an incomplete report pursuant to Section 13260.  [¶] (D) Violates a toxicity effluent limitation contained in the applicable waste discharge requirements where the waste discharge requirements do not contain pollutant-specific effluent limitations for toxic pollutants."  (§ 13385, subd. (i)(1)(A)–(D).)

Subdivisions (j), (k), and (l), as referenced in both subdivisions (h) and (i), provide for limited exceptions to these minimum penalties.  Thus, in subdivision (j), the minimum penalties in subdivisions (h) and (i) are not applicable to discharges resulting from "[a]n act of war"; "[a]n unanticipated, grave natural disaster or other natural phenomenon of an exceptional, inevitable, and irresistible character, the effects of which could not have been prevented or avoided by the exercise of due care or foresight"; "[a]n intentional act of a third party, the effects of which could not have been prevented or avoided by the exercise of due care or foresight"; the "operation of a new or reconstructed wastewater treatment unit during a defined period of adjusting or testing" provided various requirements are met (§ 13385, subd. (j)(1)(A)–(D).); or "a violation of an effluent limitation where the waste discharge is in compliance with either a cease and desist order … or a time schedule order" under very specific circumstances (*id*., subd. (j)(3)).

11.

Under subdivision (k), the statute provides an alternative to issuing all or a part of the minimum penalties against "a publicly owned treatment works serving a small community." Under this provision, the penalties can be replaced by a project designed to bring the discharger into compliance with its applicable requirements. This is permitted if three conditions are met: (1) the compliance project is designed to correct the violations within five years; (2) the project is in accordance with the enforcement policy of the State Water Board; and (3) there is a financing plan to complete the compliance project prepared. (§ 13385, subd. (k)(1)(A)–(C).) This exception is narrowed by the fact that a publicly owned treatment works serving a small community is defined by statute as one "serving a population of 20,000 persons or fewer or a rural county, with a financial hardship as determined by the state board after considering such factors as median income of the residents, rate of unemployment, or low population density in the service area of the publicly owned treatment works." (§ 13385, subd. (k)(2).)

Finally, under subdivision (l), with the discharger's consent, a specified portion of the minimum penalty can be directed toward "a supplemental environmental project." (§ 13385, subd. (l).)

*Discussion*

Availability of laches as a defense to administrative actions under section 13385

Based on the policy embodied in *Brown*, we begin with the understanding that laches should typically be available as a defense in administrative proceedings run by the state. The State Water Board makes two arguments why we should nonetheless conclude that section 13385 does not permit a defense of laches to its administrative enforcement proceedings. In the first, the State Water Board argues that equitable defenses cannot be used to countermand statutory commands on matters that are plain and fully covered by a positive statute. Under this argument, the State Water Board contends that section 13385 is plain and clear on the position that the only recognized defenses to the mandatory minimum penalties contained in subdivisions (h) and (i) are those specific examples

12.

contained in subdivision (j), which do not include any equitable rights. In the second argument, the State Water Board contends that imposition of laches would impermissibly nullify an important policy adopted for the public's benefit and thus cannot be invoked against a government agency's actions. We do not agree with the State Water Board on either point.

On the first argument, that the statutory scheme plainly and fully covers this situation, the State Water Board's position turns exclusively on the claim that the express identification of defenses in subdivision (j) demonstrates that all equitable defenses were expressly precluded. We reject this position for two reasons.

First, the language of section 13385 does not plainly exclude a defense of laches. Subdivisions (h) and (i) both impose mandatory minimum penalties for those adequately proven discharges or actions that meet certain specific criteria. In other words, they are mandatory minimum penalties for a subset of violations of subdivision (a)'s identification of actions subject to civil liability. As such, subdivisions (h) and (i)'s language is couched in terms of penalties for certain actions but says nothing about when or whether those actions can be brought in an administrative or judicial proceeding. Indeed, as Malaga notes, the prefatory language of both subdivisions (h) and (i), "[n]otwithstanding any other provision of this division, and except as provided in subdivisions (j), (k), and (l)" (§ 13385, subds. (h)(1), (i)(1)), parallels the well-known term of art, " ' "notwithstanding any other provision of law" ' " that has been consistently interpreted to preclude only conflicting laws, and not all potential applicable laws (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 931). In the context of subdivisions (h) and (i), potentially conflicting provisions or laws are those calling for a calculation of civil liability, such as that contained in subdivision (e), that accounts for various factors such as ability to pay, gravity of the violation, and prior cleanup efforts, and could warrant lowering a penalty below the statutory minimums.

13.

No similar language is contained in subdivision (j). Rather, subdivision (j) begins by limiting itself to only identifying situations where the mandatory minimum penalties will not be applicable. (§ 13385, subd. (j) ["Subdivisions (h) and (i) do not apply to any of the following .…"].) This subdivision is thus a limited set of specific defenses to the imposition of mandatory minimum liability penalties, suggesting subdivision (j) is designed to narrowly limit some substantive defenses and not to broadly counteract all potentially contradicting laws. Even if it did contain such a notion, we see nothing in the substantive defenses identified in subdivision (j), or the mandatory minimum provisions of subdivisions (h) or (i) to which it refers, that would conflict with the application of a long-standing judicial policy curtailing the ability to belatedly prosecute stale claims to the detriment of one who had relied upon their lack of prosecution. Accordingly, we do not agree that the statute's identification of a limited set of substantive defenses to mandatory minimum liability figures plainly and clearly precludes the application of laches.

Second, we also reject the State Water Board's argument because allowing the application of laches is consistent with the overall statutory scheme. The limited substantive defenses of subdivision (j), like the mandatory minimum penalties of subdivisions (h) and (i) and their similarly situated exceptions in subdivisions (k) and (l), are not applicable only to administrative proceedings brought under subdivision (c). They are equally applicable to judicial proceedings brought by the Attorney General under subdivision (b). In the context of judicial proceedings, the need to limit prosecution of stale claims has been clearly stated in Code of Civil Procedure section 338, subdivision (i), where a three-year statute of limitations has been imposed on any "action commenced under the Porter-Cologne Water Quality Control Act (Division 7 (commencing with Section 1300) of the Water Code)," of which Water Code section 13385 is a part. (Code Civ. Proc., § 338, subd. (i).) Nothing in the statutory scheme or the case law suggests that the Legislature intended to limit potentially stale

14.

actions brought in court but permit those same actions to proceed through administrative hearings.

Rather, the legislative history suggests the opposite. As detailed in *City of Brentwood v. Central Valley Regional Water Quality Control Bd.* (2004) 123 Cal.App.4th 714, 725 (*Brentwood*), when discussing the legislative history of the mandatory minimum penalties provisions and their exceptions, such as subdivision (j), "the goal of the legislation was to ensure prompt, streamlined enforcement to create a powerful incentive for discharges to comply with permit requirements." (*Brentwood*, at p. 724.) Thus, when enacted, the bill included legislative findings noting recent " 'investigations indicate that current enforcement efforts of the state board and the regional boards may not be achieving full compliance with waste discharge requirements in a timely manner, and that swift and timely enforcement of waste discharge requirements will assist in bringing the state's waters into compliance and will ensure that violators do not realize economic benefits from noncompliance.' " (*Ibid.*) As *Brentwood* noted, as a parallel to and part of the federal NPDES permitting system, the overall statutory scheme's purpose "is 'to keep enforcement actions simple and speedy.' " (*Id.* at p. 723.) This is done by limiting the fact finding and analysis necessary for imposition of penalties by requiring self-reporting that serves as admissions, and limiting the discretion in implementing penalties. (*Ibid.*) This framework strongly suggests that the application of laches was not intended to be precluded by the mandatory minimum penalties and limited defenses thereto.

For this same reason we also reject the State Water Board's contention that laches cannot bar agency enforcement actions because it would nullify an important policy adopted for the public's benefit. In streamlining the proof required for demonstrating a violation, specifically creating a statute of limitations for court actions while permitting state-level administrative actions to enforce these violations where a common-law

application of laches exists,[5] and highlighting the need to ensure speedy and effective prosecutions, the overall framework of California's enforcement scheme is designed to quickly stop and remedy polluting discharges. The legislative history suggests that this design is intentional, purposefully seeking to correct statistics showing only 1 percent of known violations were resulting in administrative penalties. (*Brentwood*, *supra*, 123 Cal.App.4th at p. 725.)

The application of laches furthers a policy of quick and timely enforcement and, ultimately, of ensuring the state's waters are clean. While the State Water Board suggests that laches will hinder effective enforcement of polluting dischargers, this seems unlikely. Indeed, it was a history of delays in administrative prosecution that led to the statutes the State Water Board now wants to use to support delays in prosecution. Allowing the government to store endless years of prior violations for prosecution in administrative proceedings rather than requiring immediate correction and cleanup through administrative penalties, where those same violations cannot be adjudicated in court, would provide an impermissible end-run around the goals of effective and speedy enforcement embodied in the statutory scheme, and could potentially lead to long-standing uncorrected pollution of the state's waters. Permitting the doctrine of laches to

---

[5]    We note here the difference between California and federal law. Although not entirely consistent across the nation, under the federal system, laches either cannot be used to hinder the government's enforcement of its rights in this area or is disfavored. (See *Coeur D'Alene Lake v. Kiebert* (D.Idaho. 1992) 790 F.Supp. 998, 1006 [noting the Ninth Circuit disfavors use of laches in public interest environmental litigation]; *Student Public Interest Research Group of New Jersey, Inc. v. P.D. Oil & Chemical Storage, Inc.* (D.N.J. 1986) 627 F.Supp. 1074, 1085 [laches no defense to government suit to enforce a public right or protect a public interest].) This applies to administrative, civil, and private enforcement actions, although other restrictions may arise, such as the inability of private enforcement actions to remedy wholly past conduct. (See *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.* (2000) 528 U.S. 167, 174–175 [noting restrictions on citizen suits].) Under California law, laches is generally accepted as a defense in quasi-adjudicative agency proceedings. (See *Brown*, *supra*, 166 Cal.App.3d at pp. 1158–1159.)

preclude stale violations thus furthers the goals of constant monitoring, effective and speedy enforcement, and immediate cleanup of the state's waters.

Adopting a relevant statute of limitations

Having concluded that laches may be asserted as a defense to administrative enforcement actions under Water Code section 13385, we next consider whether a statute of limitations exists that is sufficiently analogous to the relevant procedures such that it can be properly adopted as the point at which unreasonable delay and prejudice in enforcement is presumed. In this analysis, Malaga argues we should adopt the one-year period of limitations for actions upon a statute for a penalty or forfeiture contained in Code of Civil Procedure section 340. Malaga contends this is appropriate because the penalty is penal in nature and thus the general rule that penal penalties are subject to a one-year statute of limitations applies. The State Water Board counters that, if any period is adopted, the three-year period contained in Code of Civil Procedure section 338, subdivision (i) should apply. That statute provides for a three-year limitation on an "action commenced under the Porter-Cologne Water Quality Control Act (Division 7 (commencing with Section 13000) of the Water Code," and explains that such causes of action "shall not be deemed to have accrued until the discovery … of the facts constituting grounds for commencing actions." (Code Civ. Proc., § 338, subd. (i).)

Our discussion above, concerning whether laches applies to administrative actions, demonstrates that the relevant statutory scheme and policies underlying it support adopting a statute of limitations for a violation of Water Code section 13385 as part of the laches analysis. The need to quickly and effectively remedy pollution of the state's waters, and the dual nature of the enforcement actions embodied in the statute, demonstrate that delays in administrative prosecutions beyond those applicable to enforcement actions in the court system should be viewed as potentially stale. We agree with the State Water Board, however, that the proper period to employ under such a

17.

conclusion is the three-year period contained in Code of Civil Procedure section 338, subdivision (i).

We recognize, in line with Malaga's arguments, that nondiscretionary penalties not based on actual losses incurred are generally covered by the one-year statute of limitations for actions upon a statute for a penalty contained in Code of Civil Procedure section 340. (See *Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 842.) In such situations, general causes of action may be subject to a two-tier limitations period, with claims for actual damages subject to one limitation and other claims limited by Code of Civil Procedure section 340, as was the case in *Hypertouch, Inc*. (*Hypertouch, Inc.*, at pp. 841–845.) However, even assuming the penalties in this case fit that description, this general principle does not preclude the Legislature from adopting a different limitation period. Indeed, as an interpretive guideline, where two potential limitation periods conflict, the more recent and more specific limitation period will generally control. (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634.)

In this case, the three-year statute of limitations contained in Code of Civil Procedure section 338, subdivision (i) specifically referencing the "Porter-Cologne Water Quality Control Act (Division 7 (commencing with Section 13000) of the Water Code," was first adopted in 1981. (Stats. 1981, ch. 247, § 1, pp. 1300–1301.) Although the provisions of Water Code section 13385 were not introduced until 1987 (Stats. 1987, ch. 1189, § 10), and the mandatory minimum penalties were not included until 1999 (Stats. 1999, ch. 92, § 6), at the time Code of Civil Procedure section 338, subdivision (i) was adopted, there were already civil penalties contained within the Water Code that could be enforced through litigation. (See Wat. Code, § 13350, as amended by Stats. 1971, ch. 668, § 1; *People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30, 39 [civil penalties under Wat. Code, § 13350 are not simply and solely punitive in nature but fulfill legitimate compensatory functions]; *City of Modesto Redevelopment Agency v. Superior Court* (2004) 119 Cal.App.4th 28, 43 [discussing legislative history in context

18.

of " 'causes or permits' " language].)  In contrast, the relevant one-year statute of limitations contained in Code of Civil Procedure section 340 is based upon a statute that has been present since approximately 1850 and was present at the time Code of Civil Procedure section 338, subdivision (i) was adopted.  (See code comrs. notes, 13C West's Ann. Code Civ. Proc. (2006 ed.) foll. § 340, p. 77.)

The timeline of the amendments to the relevant statutory provisions show that Code of Civil Procedure section 338, subdivision (i) is the newer relevant limitation period.  The express reference to the Porter-Cologne Water Quality Control Act in Code of Civil Procedure section 338, subdivision (i) shows that it is the more specific limitation period involved.  The fact that this three-year period in Code of Civil Procedure section 338, subdivision (i) applied to similar types of penalties as those now contained in Water Code section 13385 shows that the three-year period was in fact intended to apply to all types of proceedings envisioned within the statutory scheme.

Further, that several amendments have been made to both Water Code section 13385 and Code of Civil Procedure sections 338 and 340 without any amendments that would change the three-year limitation period contained in Code of Civil Procedure section 338, subdivision (i), strongly suggests the Legislature has intended to maintain a single limitation period for actions under the Porter-Cologne Water Quality Control Act, as opposed to a dual limitation scheme as may be present when multiple generic limitation statutes are applicable.  Combined, these facts present a compelling argument that it is proper to adopt the limitation period of Code of Civil Procedure section 338, subdivision (i), and employ a three-year period before allowing the burden to shift to the agency to demonstrate any delay in enforcement was reasonable and without prejudice.

Conclusion

Accordingly, although it may be difficult for Malaga to succeed on a laches defense, even accounting for the potential burden shifting arising from the relevant

19.

statute of limitation, given its own self-monitoring reports are deemed admissions and it is statutorily limited in potential substantive defenses (see *Wells Fargo Bank v. Goldzband* (1997) 53 Cal.App.4th 596, 632–633 [substantial delay in enforcing well closure requirements not prejudicial as the final order did not create liability that did not otherwise exist and any action for indemnification was a private matter between the plaintiff and other parties]), we conclude that the Water Quality Board wrongly concluded that the equitable defense of laches was unavailable to Malaga. We further note that any claims where the Water Quality Board could be said to have known of the violation more than three years before the enforcement action was initiated are subject to the burden shifting presumption that the delay in initiating an action was unreasonable and prejudicial. The trial court thus erred in concluding laches was not a viable defense in this case.

## *Malaga's APA Violation Claims*

In addition to the argument that laches applies to the relevant administrative proceedings, Malaga also raises a multitude of issues regarding the proceedings themselves. Malaga does this in a free-form argument that does not separate its arguments by heading or topic. Malaga alleges that the issues raised are violations of the APA and that they deprived Malaga of a fair trial. Although not perfectly clear in scope, upon review of the briefing it appears Malaga is raising the following issues: (1) that the Hearing Procedure issued and a "Water Quality Enforcement Policy" allegedly utilized in the proceedings are invalid underground regulations; (2) that the executive director of the State Water Board acted in excess of their authority by denying Malaga's petition for review and determining Malaga is not a publicly owned facility serving a community with a financial hardship; (3) that the Water Quality Board improperly relied upon precedent that is not indexed or published as required by statute; (4) that the Advisory Team counsel improperly acted as part of the Prosecution Team; and (5) that Chairman

Longley acted in excess of his authority in ruling on pending motions. We take each in turn.

<u>1) Malaga's underground regulations claim</u>

Malaga's first APA violation claim is an assertion that two documents utilized by the Water Quality Board or the State Water Board to govern the underlying proceedings—the Hearing Procedure and another document described as a "Water Quality Enforcement Policy"—constitute underground regulations. Malaga expands upon this argument in its reply brief, focusing first on an assertion the State Water Board's executive director could not rely on the water quality enforcement policy in making any decisions because it was adopted as a guideline and not a formal regulation. It then focuses its arguments on the Hearing Procedure, mirroring the arguments it raised in another pending appeal, case No. F078327, while discussing the specific facts of this case. Malaga contends generally that reliance on an underground regulation, as a violation of the APA, requires reversal of the underlying order in all instances.

For the reasons set forth in the next section, we decline to reach whether the State Water Board's use of the water quality enforcement policy satisfies the test for relying on an underground regulation. As noted there, claims against the State Water Board have been waived and, regardless, would fail on the merits. However, despite the limited analysis provided by Malaga with respect to the Hearing Procedure, we reach a different conclusion with respect to that document. In our analysis in case No. F078327, we conclude that a more recent version of the Hearing Procedure utilized by the Water Quality Board constitutes an underground regulation, but that its use does not mandate immediate reversal. Rather, it is incumbent upon Malaga to demonstrate prejudice arising from its use to warrant reversal of the underlying penalties. We take judicial notice of those proceedings and fully incorporate our legal analysis as if set forth fully herein.

21.

Recognizing that a hearing procedure can constitute an underground regulation under certain factual scenarios, we next consider whether Malaga has demonstrated the Hearing Procedure in this case also qualifies as an underground regulation. As we explained in our companion analysis, there are two principal identifying characteristics for regulations. (See *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571.) "First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or ... govern [the agency's] procedure.' " (*Ibid.*)

Malaga makes a sufficient showing to demonstrate that the Hearing Procedure is intended to be a general rule that governs the agency's procedure. Similar to the proceedings in case No. F078327, Malaga points out here that the Hearing Procedure implements a pre-approved template designed for use in all proceedings. And, upon review, the Hearing Procedure in this case shares at least some of the additional requirements, such as pre-hearing submission of rebuttal evidence, that we concluded were improper for exceeding the duly adopted regulations in this area when considering the hearing procedure document in case No. F078327. In addition, Malaga provides evidence that the Hearing Procedure set its submission deadlines based on a standardized timeline utilized in all cases, raising additional problems with the document.

The State Water Board contends the Hearing Procedure cannot be a regulation because it satisfies the requirements of Government Code section 11425.10 and was customized for the proceedings. For the reasons set forth in case No. F078327, we reject the claim that Government Code section 11425.10 justifies the use of the Hearing Procedure in this case. Similarly, as we concluded in case No. F078327, the use of an underlying underground regulation to set the specific deadlines or procedural requirements for a specific case is problematic even if the final document issued is

22.

designed to cover only the case at issue. As we stated in case No. F078327, we, like our Supreme Court, decline to endorse an approach that would allow an agency to avoid APA requirements by driving a regulation further underground, in this case by repeating a settled policy in individual cases with minimal modification.

While an underground regulation defined the procedural requirements for Malaga's hearing, as discussed in case No. F078327, this does not mean reversal is required. Rather, consistent with *Reilly v. Superior Court*, 57 Cal.4th 641, we concluded a harmless error analysis applies in such circumstances. Here, as in case No. F078327, there has been no factual development or findings regarding prejudice by the trial court. Given this issue affects whether the underlying penalties were appropriately imposed, we believe it most efficient to remand this issue to the trial court.

### 2) To the extent Malaga raises claims against the State Water Board, they fail

The next portion of Malaga's argument is devoted to a partially developed claim that the trial court ignored issues raised before it and improperly concluded Malaga had waived its claims against the State Water Board. Malaga's arguments contain no citation to any law or any direct legal argument, but they contend that the executive director of the State Water Board acted improperly by rejecting Malaga's petition for review of the Water Quality Board's ruling and by determining whether "Malaga is or is not a publicly owned facility serving a community with a financial hardship." Respondent properly argues that such thin arguments are considered waived on appeal. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].)

However, even were we to consider Malaga's arguments, we would find no error. The actions Malaga focuses on were ultimately irrelevant. To the extent Malaga contends the executive director acted improperly by denying its petition for review, we note that petitions for review not acted upon by the State Water Board are deemed denied as a matter of law. (Cal. Code Regs., tit. 23, § 2050.5, subd. (b).) Thus, whether by the

23.

executive director or operation of law, Malaga's petition for review is properly considered denied at this point, triggering this appellate review. With respect to the publicly owned facility argument, the record reflects that staff recommended, and the Water Quality Board agreed, that mandatory minimum penalties would be appropriate in this matter regardless of Malaga's status as a publicly owned facility serving a community with financial hardship. The Water Quality Board acknowledged Malaga's prior status as such an entity but noted that past failures to comply warranted the mandatory minimum penalties, particularly given that no alternatives were offered at the time of their decision. As avoiding mandatory minimum penalties through alternative procedures is a discretionary decision by the Water Quality Board, its decision not to seek an alternative penalty even if available is independent from any allegedly improper determination by the executive director—an alleged decision that the record does not show affecting the Water Quality Board's decisionmaking process.

### 3) The Water Quality Board did not improperly rely on a draft order

Malaga contends that the Water Quality Board's decision rejecting the applicability of laches as a defense improperly relied upon a draft State Water Board order. Specifically, Malaga argues that the order in question was not properly declared to be precedent and thus could not be cited under Government Code section 11425.60. We do not agree.

Government Code section 11425.60 provides, in part, that a "decision may not be expressly relied on as precedent unless it is designated as a precedent decision by the agency," and requires the agency to "maintain an index of significant legal and policy determinations made in precedent decisions" that is available to the public and updated at least annually. (Gov. Code, § 11425.60, subds. (a), (c).)

The trial court found, and Malaga does not contest, that the Water Quality Board did not "expressly" rely on the draft order. Regardless, Malaga argues the Water Quality Board does "not need to expressly rely" on the draft order to violate the statute and points

out that the language of the order adopted in this case mirrored the language in the draft order. The State Water Board replies by citing *In re Fishery Protection and Water Right Issues of Lagunitas Creek* (Jan. 18, 1996) State Water Resources Control Board Order No. WR 96-1, page 17, footnote 11 [1996 Cal. Env Lexis 4, p. *25, fn. 11], an old administrative order designating all decisions precedential as required under the statute, noting the Water Quality Board discussed many precedents supporting its conclusion, and contending any error is harmless as the underlying dispute concerning the scope of laches as a defense is an issue of law decided de novo on appeal.

We note at the outset that we disagree with Malaga's contention that express reliance on a nonprecedential decision is not required. The clear language of the statute dictates that no decision may be "expressly relied upon as precedent" unless designated as such, thus confirming express reliance is required. Such a rule makes sense, as the agency should be permitted, as all courts are, to review its nonprecedential decisions to gain a greater understanding of how the law has been viewed and issues resolved in the past. It is only when treating those decisions as binding that the need for designation as precedential arises. As there is no argument in this case, other than a similarity in language, that the Water Quality Board treated the draft order as binding precedent, we find no error. This conclusion is buttressed by the fact that the Water Quality Board was informed of relevant decisions by counsel and discussed additional recent precedent that they concluded supported their decision. These precedents are not subject to Malaga's attack. Thus, even if the order's final language parroted a nonprecedential decision, the record reflects the fact that the Water Quality Board was considering and relying upon properly designated decisions it found precedential in reaching its conclusion. While we have ultimately disagreed with the Water Quality Board's legal conclusion, we see no error in the procedural process by which it was reached.

<u>4) Coupe did not improperly act as a member of the Prosecution Team</u>

Malaga argues that the Water Quality Board's senior counsel on the Advisory Team, David Coupe, acted improperly during the proceedings such that his role should be viewed as encroaching on the separation of the Advisory Team and Prosecution Team required by the APA. More specifically, Malaga contends that Coupe acted as the de facto decision maker on several motions raised by Malaga, dictated to the Water Quality Board what its rulings and actions must be, provided testimony regarding the appropriateness of any delay in prosecuting the action, and improperly cut off counsel to ask questions of witnesses. We find none of these claims persuasive.

With respect to rulings made during the proceedings, Malaga's argument is somewhat inconsistent with another position taken in this litigation, that the Water Quality Board's chairman could not act alone in ruling on motions. If Malaga's contention is correct, that Chairman Longley made these rulings, its contention that Coupe acted improperly cannot stand. Regardless, in our review we see nothing improper about Coupe's alleged role in drafting orders to be signed by the Water Quality Board or its chairman. The record regularly reflects Chairman Longley requesting advice from Coupe but no indication the Water Quality Board or Chairman Longley believed that advice binding. Indeed, Water Quality Board members made multiple motions to resolve disputed issues based on the evidence presented before them. The overall record provides no indication that Coupe served as a de facto or other type of decision maker for the Water Quality Board. Similarly, we see no indication Coupe's advice was seen as binding by the Water Quality Board or Chairman Longley such that Malaga's claim Coupe was dictating the results of the proceedings can withstand scrutiny.

We also reject Malaga's claims that Coupe acted improperly by providing testimony on substantive issues or by precluding counsel from asking relevant questions. With respect to the testimony issue, Malaga concedes in its argument that most of the alleged testimony was either "argument in support of the assertions in his written

26.

decision" or "in the form of a legal opinion that laches was not a recognized defense in these proceedings." Upon review of the record cited by Malaga in support of its claim, it is abundantly clear that Coupe is providing his opinion on the state of the law and the reasons why the law dictates a specific result in this case. Moreover, in all of these instances, Coupe's alleged testimony arose after a Water Quality Board member specifically asked for legal advice or opinion on an issue. In the only instance where Coupe provided any general factual detail not already covered within the record, he expressed to the Water Quality Board that he recalled personal experiences with mandatory minimum penalties being issued many years after the relevant discharges in support of his legal opinion that the law did not permit laches as a defense to mandatory minimum penalties. Upon review, we see nothing improper in Coupe's recounting of past practices as additional support for his legal advice. Similarly, in our review of the record and Malaga's citations thereto, we find no instance where Coupe precluded Malaga from asking relevant questions. Rather, in our review we found only one oddity, where Coupe asked a witness two clarifying questions following certain questioning from Chairman Longley that added no new substantive material to the record. In that instance, Coupe does not appear to have argued any substantive positions or otherwise utilized his position as advisory counsel to act in a prosecutorial role.

### 5) Chairman Longley could properly rule on pending motions

Malaga next contends that Chairman Longley exceeded his authority by ruling on motions, evidentiary objections, and other procedural matters. Citing Government Code section 11430.70, Malaga claims the presiding officer in these administrative hearings (i.e., the entity permitted to rule on such matters) is defined by statute as the "agency head or other person or body to which the power to hear or decide is delegated." In the context of the penalties at issue, Malaga notes that the Water Quality Board is the body authorized to make a final decision on penalties. (See Wat. Code, §§ 13323, 13385,

27.

subd. (c).)  Malaga extrapolates from this that Chairman Longley could not rule on any motions because the Water Quality Board as a whole had to act on each one.

The State Water Board disputes this logic, arguing Chairman Longley was authorized to rule on these matters as the presiding officer of the Water Quality Board and citing Government Code sections 11425.10, 11445.40, 11513, subdivision (f) and California Code of Regulations, title 23, section 648.4.  The State Water Board argues a contrary finding would lead to absurd results through the waste of time that would occur should the full board have to vote on every nonsubstantive issue.  Further, the State Water Board contends that any error in authority would be harmless because, at Malaga's request, the full board ultimately authorized all rulings made by Chairman Longley.

We agree with the State Water Board.  Malaga's claim that a "presiding officer" is defined under Government Code section 11430.70 as the "agency head or other person or body to which the power to hear or decide is delegated" is misplaced.  The definition is actually provided in Government Code section 11405.80, which states the presiding officer is "the agency head, member of the agency head, administrative law judge, hearing officer, or other person who presides in an adjudicative proceeding."  There appears no doubt that Chairman Longley is safely categorized as a hearing officer or "other person" who presided in an adjudicative proceeding.

Government Code section 11430.70, and Malaga's citation to *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 11–15, do not change this definition.  Rather, those precedents discuss restrictions on ex parte communications to agency heads and say nothing about how to define a presiding officer under the relevant statutory scheme.  Indeed, Government Code section 11430.70, subdivision (a) specifically notes the difference between a presiding officer and the agency head subject to Malaga's alleged definition, explaining "the provisions of this article governing ex parte communications to the presiding officer also govern ex parte communications in an adjudicative proceeding to the agency head or

28.

other person or body to which the power to hear or decide in the proceeding is delegated." (Gov. Code, § 11430.70, subd. (a).)

***Substantial Evidence Supports the Water Quality Board's Determination***

Finally, Malaga argues that there was insufficient evidence admitted to sustain the Water Quality Board's penalties. Related to this contention, and argued partially in Malaga's APA violation discussion, is the claim that no evidence was properly admitted showing actual violations of the discharge requirements. Malaga states that the only evidence entered at the hearing was the improper narrative testimony of Wass and an attachment summarizing alleged violations that Malaga objects to as hearsay. Malaga acknowledges that other documents, including Malaga's own self-monitoring reports, were made part of the administrative record, but claims their admission violates Government Code section 11513.[6] Malaga further claims the Water Quality Board "simply never considered the self-monitoring reports and expressly based their decision entirely on Wass'[s] testimony and Attachment A." Malaga then attacks attachment A, arguing it incorrectly summarized the self-monitoring reports and did not include Malaga's previously stated positions on the violation allegations. Malaga uses this attack to assert that the Water Quality Board based its entire opinion on hearsay and thus violated Government Code section 11513, which permits hearsay to supplement findings but not to support them.

The State Water Board contests these positions. On the admission of relevant evidence and narrative testimony, the State Water Board relies on the specific language of Government Code section 11513 and the lack of any contradicting case law to claim narrative testimony is permissible in administrative proceedings. It relies on Evidence Code section 1220, Government Code section 11513, and *Brentwood*, *supra*,

---

[6] Malaga appears to improperly identify this statute as part of the Evidence Code in its brief. This court has identified no portion of the Evidence Code that would otherwise satisfy Malaga's argument and citation.

29.

123 Cal.App.4th at pages 723–724 for the position that Malaga's self-reported violations were nonhearsay, and a staff summary of those documents was admissible in an administrative setting. As to the Water Quality Board's final decision, the State Water Board explains that this court presumes that all relevant documents in the record were considered, whether or not specifically discussed at the hearing, and argues that specific reliance on staff reports and testimony is further permissible because the underlying documents were within the record.

"Government Code section 11513, subdivision (c), addresses the admissibility of evidence generally in administrative hearings. It states: 'The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.' " (*Lake v. Reed* (1997) 16 Cal.4th 448, 458 (*Lake*).) Under the statute there are two general principles. First, the evidence must be "the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." (Gov. Code, § 11513, subd. (c).) Second, while hearsay may be utilized, it may not be the only evidence supporting a conclusion unless otherwise admissible in a civil action. (*Id.*, subd. (d).) In *Lake*, these principles permitted the admission of hearsay police reports, but limited the utility of the statements in those reports such that they could only be considered if they supplemented nonhearsay evidence properly admitted or hearsay evidence subject to an exception. (*Lake*, at pp. 461–462.)

We conclude this issue is readily resolved through the principles underlying the substantial evidence standard of review. The trial court and this court is obligated to

review the entire administrative record to determine whether substantial evidence supports the Water Quality Board's decision. (See *Bixby v. Pierno* (1971) 4 Cal.3d 130, 149 & fn. 22.) Moreover, when a challenge is raised to " 'an administrative decision as unsupported by substantial evidence in light of the record as a whole, it is [the] appellant's burden to demonstrate that the administrative record does not contain sufficient evidence to support the agency's decision.' [Citation.] A recitation of only the part of the evidence that supports the appellant's position 'is not the "demonstration" contemplated under the above rule.' " (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 749) Indeed, a wholly one-sided argument style can even result in waiver of the claim. (*Ibid.*)

In this case, Malaga has not raised any specific argument that its own self-monitoring reports are not within the administrative record. In its response, the State Water Board routinely cites to the administrative record when pointing this court to portions of Malaga's self-monitoring reports where violations are shown. Rather, Malaga generally argues that these documents were not directly introduced or discussed at the administrative hearing nor specifically referenced in the final statement of decision. Malaga then contends that the summary of these self-monitoring reports was hearsay and thus unreliable. While Malaga also hints that the summary was incorrect, Malaga raises no specific argument as to how any of the identified violations were not actually violations of the underlying discharge requirements nor how any specific violation should not result in penalties.

As explained in *Lake*, *supra*, 16 Cal.4th at page 458, while hearsay evidence is insufficient to support a point itself, it is perfectly acceptable evidence to rely upon in an administrative proceeding to supplement or explain other admissible evidence. Thus, while the Water Quality Board could not make a finding if the only evidence in the record was the summary contained in attachment A, or the hearsay portions of Wass's testimony, such evidence may be introduced and relied upon if it supplements or explains

other evidence showing violations. Upon review of the entire record, it is clear that such evidence, admissible as a party admission by Malaga, is in the record in the form of Malaga's self-reported violations. Similar to *Lake*, once it is shown that such evidence is in the record, it is perfectly acceptable to rely upon hearsay evidence that supplements or explains what those documents show. Here, that evidence is Wass's testimony and the summary created by Water Quality Board staff. There appears no argument this evidence is not the sort of evidence on which responsible persons are accustomed to rely on in the conduct of serious affairs.

While Malaga's arguments distill to a claim the underlying self-reported violations needed to be individually introduced at the hearing and specifically identified by the Water Quality Board in its final decision, it cites no law which mandates such a specific course of conduct. Regardless, a reviewing court's duty to review the entire administrative record, as opposed to only those documents cited by the agency, necessarily undercuts any claim that the agency must identify each piece of evidence it relied upon. Moreover, Malaga points to no legal bar to it contesting any specific violations at the administrative hearing that it feels are not sanctionable, and yet the record shows no meaningful contest to individual notices either at the administrative proceedings or here.

Ultimately, Malaga cannot demonstrate the Water Quality Board's choice to utilize the limited time before it to listen to a summary of the evidence submitted, and to rely upon that summary rather than requiring courtroom level evidence on each point, is erroneous in the context of these administrative proceedings. Upon review of the entire record, we conclude that substantial evidence was introduced in the proceedings that supports the Water Quality Board's imposition of penalties.

## *Conclusion*

Upon consideration of the various issues Malaga has raised, we have found two errors. First, laches is a proper defense to the administrative proceedings in this case. A

32.

three-year period should be used to determine whether laches is presumed to bar any proposed penalties. Second, the Water Quality Board's Hearing Procedure constitutes a void underground regulation. However, to warrant voiding the penalties imposed here, Malaga must demonstrate using the Hearing Procedure was not harmless. In all other respects, we find no error.

## DISPOSITION

The superior court's order denying Malaga's petition for a writ of administrative mandamus is affirmed in part and reversed in part. The matter is remanded for the trial court to determine whether the writ should issue based on one or both of Malaga's right to present a laches defense and the Water Quality Board's use of a void underground regulation via the Hearing Procedure.

Malaga is entitled to its costs on appeal.

HILL, P.J.

WE CONCUR:


LEVY, J.


DETJEN, J.

33.